Per Curiam :
This case was referred to Trial Commissioner George Willi, with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed on March 31,1966. Exceptions to the commissioner’s opinion and report were filed by plaintiff, briefs were filed by the plaintiff and the defendant and the case was submitted to the court on oral argument of counsel. Since the court is in agreement with the opinion, findings and recommendation of the trial commissioner, it hereby adopts the same as the basis for its judgment in this case, as hereinafter set forth. Plaintiff is, therefore, not entitled to recover on her claim and the United States is not entitled to recover on its cross-claim. The petition and cross-claim are dismissed.
OPINION OE COMMISSIONER*
Willi, Commissioner:
Plaintiff is the widow of Taivo A. Erickson, a former career Government employee who retired from the Central Intelligence Agency (CIA) on February 28, 1957, prior to his marriage to her.
When Mr. Erickson died on May 1, 1959, he was the insured under an $8,000 policy of insurance authorized by the Federal Employees’ Group Life Insurance Act of 1954. 5 U.S.C. *186 §§ 2091, et seq.[1] Over plaintiff’s protest the insurer, Metropolitan Life Insurance Company, paid the policy proceeds to Mr. Erickson’s daughter as his designated beneficiary. Thereupon plaintiff filed the instant suit against the United States for the amount of those proceeds. The United States joined Metropolitan as a third-party defendant, asserting a right of reimbursement for the amount of any judgment entered against it in respect of the transaction in suit. The plaintiff asserts no claim against Metropolitan, and defendant now concedes that the United States’ contingent claim against it is without merit whatever the plaintiff’s recovery rights.
The relevant facts, only summarized herein, are detailed in the accompanying findings of fact.
In December 1956, Mr. Erickson, having been employed for more than seven years by CIA and for more than thirty years in all by the Federal Government, determined to retire. At that time he was a widower with one child, a grown daughter named Patricia S. McAdams, who lived in Washington, D.C. with her three young sons.
On December 17, 1956, he filled out and filed with CIA his application for retirement. The application was processed and approved in due course by CIA and was then transmitted to the Civil Service Commission, where it was received on March 14, 1957. Following receipt of this application the Commission first assigned Mr. Erickson a Civil Service Annuity (CSA) number and advised him of that number by postal card. Such an assigned number is the means by which each annuitant’s records are maintained by Civil Service.
Also, on December 17, 1956, the same date that he filed his application for retirement, Mr. Erickson executed a Designation of Beneficiary form with respect to his Federal Employees’ Group Life Insurance. He designated his daughter as primary beneficiary, added her three sons as contingent beneficiaries, and had his signature on the form witnessed by two fellow-workers at his office. At this juncture the form did not bear Mr. Erickson’s CSA number because, as pre *187 viously stated, such, a number was not assigned him until approximately three months later.
There is no competent evidence showing affirmatively what Mr. Erickson did with the beneficiary form immediately after executing it. That he did not officially file it with CIA is attested by the fact that the form, received in evidence at the trial, bears no agency stamp or other identifying mark on it. As will be seen, however, subsequent events render irrelevant the matter of the form’s immediate disposition following execution.
It is undisputed that the designation form was received by the Civil Service Commission on March 15, 1957, the day after it received Mr. Erickson’s approved retirement application and related papers from CIA. As received by the Commission, the form gave no indication that Mr. Erickson was hi other than a currently employed status with CIA. Accordingly, the Commission returned the form to him by mail at his home address with the accompanying explanation that if, as indicated by the designation, he was currently employed, he should file the form with his employing agency. If, on the other hand, he was either retired or about to retire, he was directed to revise the form to reflect his retirement date and CSA number, if available, and return the designation to the Commission.
When Mr. Erickson received his designation by mail, he complied with the directive that accompanied it. He typed his retirement date and CSA number, of which he had by that time been advised, on the designation and returned it to the Civil Service Commission, where it was received and retained on file. No subsequent life insurance beneficiary designation was ever submitted to the Civil Service Commission by Mr. Erickson.
In October 1957, a week before his marriage to the plaintiff, Mr. Erickson wrote the Civil Service Commission stating that he wished to make the plaintiff his primary beneficiary and his daughter contingent beneficiary, and requesting that he be supplied the forms necessary to effect that change. The Commission promptly sent him two sets of beneficiary designation forms, one pertaining to his life insurance and the other to his Civil Service retirement. He filled out the *188 latter form, designating the plaintiff as primary beneficiary, and his daughter as contingent beneficiary, and filed it with the Commission. He was a meticulous and orderly person by nature, and the receipted copy of this form was found among his personal papers after his death. As to his life insurance, however, he never filed a further designation with the Commission and no designation forms, blank or filled out, were found among his papers.
On October 12, 1957, Mr. Erickson married the plaintiff, with whom he had become acquainted while working in the same office at CIA. It was the plaintiff’s first marriage; she was forty-six and Mr. Erickson fifty-eight at the time. She continued with her Government job, and the marriage produced no children.
Not long after Mr. Erickson married the plaintiff, his daughter remarried and moved to California. While the circumstances surrounding this remarriage and his daughter’s general behavior were a source of disappointment to Mr. Erickson, he never rejected her. In fact, she wrote to him approximately once a month from California.
In August 1958, Mr. Erickson executed his last will and testament. He bequeathed $5 each to a brother and sister, $100 to his daughter, and left the balance of his estate, valued at approximately $15,000, to the plaintiff, his named executrix. There was no contest, and the estate was distributed in accordance with the will.
After Mr. Erickson died in May 1959, the Civil Service Commission formally certified to the insurer that his daughter was the designated beneficiary under his Federal Employees’ Life Insurance policy. In the light of this certification the insurer denied the claim that plaintiff had filed and paid the entire policy proceeds to the daughter in October 1959.
The plaintiff advances three contentions in support of her claim that the Government is indebted to her for the amount of the insurance proceeds paid her late husband’s daughter. Each of the arguments fails primarily because each presupposes a factual setting essentially different from that established by the record in the case.
*189 First, she says that the Government breached a duty owed the decedent when the CIA accepted his December 17, 1956 beneficiary designation while he was still on the rolls and then transmitted it to the Civil Service Commission without causing him to execute a new designation after his retirement became effective, voiding the designation on file.
The principle that this court’s Tucker Act jurisdiction embraces a breach of any legal duty owed by the United States to one of its employees by virtue of statute or regulation relating to his Federal Employees’ Group Life Insurance is now settled. Walker v. United States, 161 Ct. Cl. 792 (1963); Barnes v. United States, 307 F. 2d 655 (D.C. Cir. 1962).
The Government does not gainsay its responsibility for a demonstrated breach of such a duty. It says, rather, that on the facts here involved no breach occurred. Its position is well taken.
Indispensable to the plaintiff’s breaeh-of-duty claim is the untenable assumption that the filing of the designation form on March 15, 1957 with the Civil Service Commission was the last action that occurred with respect to it by or on behalf of Mr. Erickson. Such was not the case.
The evidence is compelling that when the form was received by the Commission on March 15, from wherever transmitted, it did not identify Mr. Erickson as a retired employee. As of that date he had not yet been assigned a Civil Service Annuity (CSA) number, because the Commission had only received his application for retirement the day before. In these circumstances the Commission returned the designation form to Mr. Erickson, who by that time had been advised of his newly assigned CSA number by postal card. He typed that number and his date of retirement on the form and returned it to Civil Service where it was accepted and retained as a designation duly filed by a retiree. It was this filing by Mr. Erickson, who was clearly in a retired capacity at the time, that fixed the legal status of the designation form under applicable regulations and policy *190 provisions.[2] This act constituted a viable designation and it did so irrespective of the prior history of the form employed, including the possibility that it had earlier become voided by the interaction of initial filing and Mr. Erickson’s retirement.[3] Whatever infirmities the form may have had when first received by the Commission on March 15, 1957, were purged by the insured’s subsequent act of refiling.
It is also noteworthy that by his subsequent conduct, Mr. Erickson affirmatively registered his awareness that the designation running to his daughter controlled the disposition of his policy proceeds. Such an understanding is implicit in his letter of October 1957 to the Commission, stating that he wanted to change his designation so that the plaintiff would be primary beneficiary and his daughter contingent beneficiary. Moreover, he expressly noted his assumption that the preparation and filing of a new designation form would be necessary to effect such a result. Though the Commission promptly sent him the requested forms, he never filed any further designation, and there is no evidence that he ever so much as filled one out or even retained the forms so that he could take action at a future date.
Under the circumstances as they actually existed, it cannot be said that the United States breached any obligation to Mr. Erickson imposed by statute, regulation or otherwise with respect to his Federal Employees’ Group Life Insurance.
Plaintiff’s second contention proceeds on an erroneous conception of the date on which Mr. Erickson’s retirement became effective.
*191 She contends that the designation running to the daughter was vitiated by the terms of the policy,[4] because Mr. Erickson became legally retired only after the designation was filed with the Civil Service Commission on March 15, 1957. She urges that the decedent did not assume retired status March 1, 1957, because as of the close of business February 28, 1957, his last day of employment with CIA, he had 100 hours of unused annual leave to his credit. This leave, if used, would have run until noon on March 19, 1957.
The accrued annual leave did not operate to postpone the effective date of Mr. Erickson’s retirement. It is undisputed that his last day of work was February 28, 1957, and that his salary stopped on that day. Thus, Mr. Erickson’s retirement annuity began on March 1, 1957, as “* * * the first of the month after separation from the service * * *” and “* * * the first of the month after salary ceases * * [5]
On April 5, 1957, Mr. Erickson received a lump sum payment of $319.09 covering the 100 hours of accrued leave due him. It is expressly provided by statute that such a payment is not to be regarded as salary except for purposes of taxation. 5 U.S.C. § 61b. Accordingly, Mr. Erickson was already legally “retired” on March 15, 1957, when the Civil Service Commission first received his beneficiary designation, to say nothing of when he thereafter refiled the form with the Commission after adding the effective date of his retirement (March 1, 1957) and his CSA number.
Finally, the plaintiff contends that even if the beneficiary designation be deemed initially valid, as a designation filed by a former employee in retired status, it should be regarded as superseded by Mr. Erickson’s subsequent communication to the Commission in October 1957. The claim is that the October letter, stating the insured’s desire to make plaintiff his primary beneficiary and requesting the forms necessary to effectuate such a change, is such a clear manifestation of intent that it should be deemed a legally effective designation of the plaintiff as primary beneficiary.
*192 To support this theory of recovery plaintiff relies on Smith v. Metropolitan Life Insurance Co., 142 F. Supp. 320 (N.D. Cal. 1956); United States v. Pahmer, 136 F. Supp. 762 (S.D.N.Y. 1956), reversed, 238 F. 2d 431, cert. denied, 352 U.S. 1026; and Sears v. Austin, 292 F. 2d 690 (9th Cir. 1961), cert. denied, 368 U.S. 929. Her difficulties with this approach are insurmountable.
It is essential to recognize that each of the cited cases, admittedly according priority to the insured’s expressed intent over formal compliance with policy requirements respecting beneficiary designation, involved only a dispute between competing beneficiary claimants with the insurer’s role being that of a mere stakeholder. The opinions in those cases expressly noted the critical importance of this consideration in the selection of controlling legal principles.[6] Notably, the instant case, where payment has been made and the issue is whether it is to be made for a second time, presents precisely the situation distinguished in the authorities relied on by plaintiff. Their relevance, even in principle, is therefore tenuous at best.
The plaintiff’s problem of showing that the insured’s intent is the touchstone of her beneficiary rights is small, however, when compared with her difficulties of proving that Mr. Erickson’s intent convincingly pointed to her rather than his daughter.
*193 At the outset, it must be understood that the principle Which actuates the courts in giving effect to the ascertained intentions of the insured has application only where the party has attempted to act for himself. The expressed intention of the insured to change the beneficiary, standing alone and unaccompanied by some affirmative act, having for its purpose the effectuation of his intention, is insufficient to effect a change of beneficiary and the courts cannot act when he had not first attempted to act for himself. Bradley v. United States, 143 F. 2d 573, 576 (10th Cir. 1944), cert. denied, 323 U.S. 793.
Mr. Erickson’s letter of October 1957 to the Civil 'Service Commission, the direct evidence on which plaintiff relies to prove an intent running counter to the formalities, cannot be reasonably characterized as any more than an announcement of a plan to be implemented in the future. The insured was a knowledgeable man and was specifically familiar with beneficiary designation forms. He had previously filed one running to his daughter, and his letter implicitly acknowledged his understanding that the designation on file with the Commission was currently in force. Moreover, he expressly stated 'his assumption that effectuation of a change would require the execution and filing of a new form. In these circumstances it cannot be said that Mr. Erickson entertained any notion that the mere writing of his letter would operate to effect a change of beneficiary.
The Commission promptly sent him beneficiary designation forms for both retirement and life insurance purposes. Significantly, while he completed the retirement forms, designating the plaintiff as primary beneficiary thereunder, and filed them with the Commission, there is no evidence that he ever did anything towards completing or filing the insurance designation forms. Nothing pertaining to these forms was found among the personal papers of this man who was by nature a careful, methodical and informed person with unquestioned physical and mental capacity up to the date of his death. Accordingly, it must be concluded that the evidence fails to establish either any affirmative act by the insured in furtherance of the prospective plan announced in the letter *194 of October 5, 1957, or any reasonable excuse for a failure to act. In these circumstances reformation to comport with a bare expression of intent is unwarranted.
Plaintiff urges that Mr. Erickson’s will of August 1958, leaving everything to her except for nominal bequests to a brother, sister and his daughter, should be deemed to confirm his intention that she receive his life insurance proceeds.[7] In essence, the argument is that since Mr. Erickson left her substantially all of his other property, he should be deemed to have intended that she receive the insurance proceeds as well. Neither the language of the will, containing no reference to insurance, nor the surrounding circumstances support the view that plaintiff must take; that Mr. Erickson intended to disinherit his only child, herself the mother of three young boys.
When plaintiff and Mr. Erickson married, both were along in years. Plaintiff had been self-supporting and she continued with her Government job after the marriage. Under the terms of his will he left her approximately two-thirds of what ultimately became his total estate. There is no evidence that her economic needs were such as to impel Mr. Erickson to appropriate his entire estate to her future welfare.
While it is true that he became disappointed with his daughter’s deportment, especially her remarriage that shortly followed his own, plaintiff frankly concedes that relations between them did not deteriorate to a point where he ever re-j ected her. That he did not do so is indicated by the fact that even when he made plaintiff the primary beneficiary of his retirement fund in November 1957, he designated his daughter as contingent beneficiary. There is, of course, no suggestion that he had other than the warmest regard for his three grandsons.
In the totality of the circumstances it is most reasonable to conclude that Mr. Erickson regarded the provisions of his will as satisfying his marital obligations and those of his insurance estate his parental obligations.
Although, in the face of plaintiff’s formal claim and protest made prior to the insurer’s payment of the policy pro *195 ceeds, a preferable procedure in this situation might have been to pay the proceeds into a court’s registry and let plaintiff and Patricia Smothers litigate their competing beneficiary rights, it cannot be said that the Government certification of the latter as beneficiary or Metropolitan’s payment on the basis of that certification was erroneous.
Findings op Fact
1. Plaintiff is the widow of Taivo Erickson, a career Government employee who was working for the Central Intelligence Agency (CIA) in Washington, D.C. as a budget officer when he elected to retire on February 28, 1957, after more than thirty years of Federal service, the greater portion of which had been spent in a generally similar type of work with the U.S. Department of Agriculture.
2. When Mr. Erickson retired he was a widower, his first wife having died on March 1, 1956. His only child was a daughter, Mrs. Patricia S. McAdams (later Mrs. Patricia S. Smethers), who lived in Washington, D.C. with her three minor sons.
3. Mr. Erickson became acquainted with the plaintiff while both were working in the same office at CIA. They married on October 12, 1957. The marriage produced no children, and the plaintiff continued with her Government job. Shortly after this marriage Mr. Erickson’s daughter remarried and moved to California.
4. Mr. Erickson suffered a heart attack and died on May 1, 1959.
5. As a Federal employee, Mr. Erickson was insured under the Federal Employees’ Group Life Insurance program. In December 1956, when he determined to retire, his coverage under the program was $8,000. That coverage remained in force after his retirement and until his death. Thereupon the proceeds were paid to the decedent’s daughter, Patricia, over plaintiff’s protest that in the circumstances of the situation she, rather than the daughter, was the proper beneficiary.
6. The insurance in question was provided by a group life policy purchased by the Civil Service Commission, as the *196 policyholder, from the Metropolitan Life Insurance Co., the insurer.
7. Section 11 of the Metropolitan policy, Group Policy No. 17000-G, provides:
BENEFICIARIES. — Any Employee insured hereunder may designate a Beneficiary and may, from time to time, change his designation of beneficiary, only by filing written notice thereof, signed and witnessed, with Ms employing office or, in the case of a retired Employee, with the Policyholder, whereupon an acknowledgment of such designation or change will be furnished the Employee. Consent of the Beneficiary shall not be requisite to any change of beneficiary. A witness to a designation or change of beneficiary shall 'be ineligible to receive payment as a Beneficiary. A designation or change of beneficiary shall take effect only if it is received by the employing office of the Employee or, in the case of a retired Employee, by the Policyholder, prior to the death of the Employee and shall be effective as of the date of receipt of said written notice. Any designation of beneficiary shall automatically cease to be effective on (i) the date the Employee is transferred to another agency, (ii) the date thirty-one days after the date of cessation of the Employee’s insurance hereunder, or (iii) the date of retirement of the Employee, whichever first occurs.
If, at the death of any Employee insured hereunder, there shall be more than one designated Beneficiary, then, unless such Employee shall have specified the respective interests of such Beneficiaries, the interests of such Beneficiaries shall be several and equal. If any designated Beneficiary shall predecease the Employee, the rights and interest of such Beneficiary shall thereupon automatically terminate. If, at the death of the Employee, there be no designated Beneficiary as to all or any part of the insurance, then the amount of the insurance payable for which there is no designated Beneficiary shall be payable to the person or persons listed below surviving at the date of the Employee’s death, in the following order of precedence: ill To the widow or widower of the Employee;
(2) If neither of the above, to the child or cMldren of such Employee and descendants of deceased children by representation;
*****
8. In late 1956, when Mr. Erickson was contemplating retirement, CIA had an established practice of counseling all *197 prospective retirees on matters relevant to their upcoming retired status. The counseling included such matters as a calculation of the amount of the monthly Civil Service retirement annuity that the retiree could expect to receive and an explanation of the implications of retirement as it would affect the retiree’s Government health and life insurance coverage. Mr. Erickson was by nature a conscientious adherent in all matters of governmental rules and regulations.
9. On December 17, 1956, Mr. Erickson filed with CIA his completed and executed Form 2801, Application For Retirement. On this application he proposed February 28, 1957, as his final date of employment, and elected to receive his retirement in the form of a life annuity with no survivorship benefits payable. The application was duly processed by CIA and ultimately transmitted, together with related papers, to the Civil Service Commission, where it was received on March 14, 1957. Thereupon the Commission assigned Mr. Erickson a Civil Service annuity claim number (CSA-464 654), which it stamped on the retirement application and concurrently noted on a postal card sent to him at his home address.
10. On December 17, 1956, the same date as he executed and filed the retirement application previously described, Mr. Erickson executed a Standard Form 54, Designation of Beneficiary, relative to his Federal Employees’ Group Life Insurance. Two fellow-employees, Glen W. Hitt and Thomas J. Hollihan, witnessed his signature on this form. All information called for by the form, other than the signatures, was filled in by typewriter.
11. Inspection of the typing appearing on the designation form immediately reveals that the typewritten information was added on three separate occasions by the use of two different typewriters.
12. The first category of typing was put on the form prior to its execution on December 17, 1956. This material included Mr. Erickson’s name, date of birth, employing agency, and the name, address and relationship of his daughter, designated as the sole beneficiary under the policy.
13. The second distinct category of typing was done on December 17, 1956, with a different machine. The informa *198 tion added at that time was the date of execution of the form (December 17, 1956) and the designation of Mr. Erickson’s three grandsons as contingent beneficiaries, each to receive one-third of the policy proceeds.
14. Finally, at some time after March 15, 1957, Mr. Erickson’s date of retirement and his Civil Service annuity number were added, that number only having been assigned him after the Civil Service Commission received his retirement application on March 14, 1957. This typing was done on the same machine as that described in finding 12, above, but obviously on a different occasion as evidenced by the notable difference in ribbon character.
15. Aside from the fact that Mr. Erickson did not formally file his beneficiary designation form with the CIA, as attested by the lack of any agency stamp or mark on it, the evidence is inconclusive as to precisely what he did with the form after executing it. Thus, there is no persuasive evidence either (1) that he retained the form himself until transmitting it to the Civil Service Commission in March 1957, or (2) that he turned it over to someone in CIA who held it as a matter of inf orinal accommodation before sending it to the Commission for him after his retirement. The latter alternative is a procedure frequently employed in the various executive departments on behalf of employees whose retirement is imminent. In any event, the form was first received by the Civil Service Commission on March 15, 1957, the day immediately following the Commission’s receipt of Mr. Erickson’s application for retirement, described in finding 9, above.
16. After the beneficiary designation form was received by the Civil Service Commission, it was assigned to an examiner for review and a determination of validity.
17. As stated in finding 14, above, when the form was first received by the Commission, it did not have on it the information relating to Mr. Erickson’s date of retirement or his CSA number. Accordingly, as completed, the form indicated that Mr. Erickson was currently employed by CIA. In these circumstances the Civil Service reviewing examiner returned the form to Mr. Erickson at his home address with the following explanatory printed slip attached:
*199 Your Designation of Beneficiary under the Federal Employees’ Group Life Insurance Act of 1954 is returned unprocessed.
All Designations of Beneficiary under the above Act for current employees are maintained by the agency in which they are presently employed. Since it appears that you are currently employed you should submit the “Designation of Beneficiary” to the personnel office of your employing agency.
If you have retired or are contemplating retiring within the next 30 days, the attached Designation of Beneficiary should be returned to this office showing your retirement claim number, if available, and the date of retirement.
18. When Mr. Erickson received his designation form together with the described attachment, he had already been advised of his CSA number in the manner outlined in finding 9, above. Accordingly, he typed “Retired effective 1 March 1957” and “Claim No. CSA-464 654” under the heading “Department or Agency in Which Employed” on the form and returned it to the Civil Service Commission where it was found to be in order and retained on file as an effective designation of beneficiary filed subsequent to the insured’s retirement. No other life insurance beneficiary designations were thereafter filed with the Commission by or on behalf of Mr. Erickson.
19. On April 5, 1957, Mr. Erickson received a U.S. Government check for $319.09 representing payment in full for 100 hours of unused annual leave credited to Mr. Erickson as of the close of business February 28, 1957, the effective date of his retirement.
20. On October 5, 1957, one week prior to his marriage to the plaintiff, Mr. Erickson addressed the following letter to the Civil Service Commission:
Gentlemen: Claim No. CSA 464 654
I wish to change the designation of beneficiary in the above referenced claim from current designation to Mrs. Aura L. Erickson, 1400 W'St., N.W.,
Washington, D.C., Wife — Entire.
Mrs. Patricia S. McAdams, if Mrs. Aura L. Erickson is deceased.
I presume it will be necessary for me to prepare a new set of Form No. 54, and request the necessary number be sent to me.
*200 21. On October 9, 1957, the Civil Service Commission sent Mr. Erickson Designation of Beneficiary forms relating to both the Federal Employees’ Group Life Insurance program and to the Civil Service Retirement System.
22. On November 4, 1957, Mr. Erickson executed a Designation of Beneficiary under the Civil Service Retirement System denominating the plaintiff as primary beneficiary and his daughter as contingent beneficiary. Such a designation is operative only in the event that at the retiree’s death some lump sum benefit becomes payable. The designation has no bearing on the matter of survivorship annuity benefits which, in Mr. Erickson’s case, had been waived by his election on his retirement application to receive a life annuity.
23. The form described in finding 22, above, was received by the Civil Service 'Commission on February 11, 1958, and the completed duplicate copy returned to Mr. Erickson who retained it among 'his personal papers. At the death of Mr. Erickson, who was a meticulous and methodical person, those papers did not include any life insurance beneficiary designation forms, completed or uncompleted.
24. As heretofore noted, not long after Mr. Erickson married the plaintiff, his daughter, Patricia McAdams, remarried (becoming Mrs. Patricia S. Smethers) and moved to California. Although relations between father and daughter were strained as a result of his disappointment with certain aspects of her behavior, including her remarriage, the relationship did not deteriorate to a point where he rej ected her. For example, she corresponded with him on the average of once a month after she moved from Washington.
25. On August 15, 1958, Mr. Erickson executed his last will and testament. The will bequeathed $5 each to the testator’s sister and brother, $100 to his daughter, and all of the rest and residue of his estate to the plaintiff, his named executrix.
26. After Mr. Erickson died, his estate, valued at approximately $15,000, aside from the insurance proceeds involved in this suit, was distributed in accordance with the will.
27. The Office of Federal Employees’ Group Life Insurance is an office created and maintained by the insurer, Metropolitan Life Insurance Company, to administer Group Policy No. 17000-G. After Mr. Erickson’s death the Civil Service Com *201 mission certified to that Office that the insured’s daughter was the designated beneficiary under his policy. That certification was never modified or withdrawn.
28. On or about May 17, 1959, the plaintiff filed an Application for Death Benefits under the Civil Service Eetirement System. By a notice dated June 24, 1959, the Commission advised plaintiff that no benefits were payable in respect to Mr. Erickson’s death inasmuch as all moneys paid into the retirement fund by him had been returned in the form of monthly annuity checks.
29. In early July, 1959, the plaintiff filed a claim with the Office of Federal Employees’ Group Life Insurance for the proceeds payable under the policy on Mr. Erickson’s life. By a letter of July 9, 1959, that Office advised plaintiff that her claim could not 'be honored because there was no record of the insured’s having designated any primary beneficiary other than his daughter.
30. By a letter dated August 3, 1959, to the Office of Federal Employees’ Group Life Insurance, plaintiff’s attorney appealed the earlier denial of her claim and advised that if payment were made to the daughter, plaintiff would file suit to recover the policy proceeds.
31. Meanwhile, Mrs. Patricia S. Smethers filed a claim with the Office of Federal Employees’ Group Life Insurance for the proceeds of Mr. Erickson’s policy.
32. On or about October 2, 1959, the insurer paid Mrs. Smethers the sum of $8,000, the entire proceeds payable on the life of Mr. Erickson.
Conclusion of Law
Upon the foregoing findings of fact and opinion, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover on her claim and the United States is not entitled to recover on its cross-claim. Accordingly, both the petition and the cross-claim are dismissed.

 The opinion, findings of fact, and recommended conclusion of law are submitted under the order of reference and Rule 57(a).

 For an explanation of the details of this insurance program see Walker v. United States, 161 Ct. Cl. 792 (1963) and Barnes V. United States, 307 F. 2d 665 (D.C. Cir. 1962).

 The Metropolitan policy, Group Policy No. 17000-G, denominates the Civil Service Commission as the policy holder, with respect to an insured’s designation of beneficiaries it provides :
A designation or change of beneficiary shall take effect only if it is received by the employing office of the Employee or, in the case of a retired Employee, by the Policyholder, prior to the death of the Employee and shall be effective as of the date of receipt of said written notice.

 With respect to the effect of an employee’s retirement on a designation of beneficiary previously filed by him while actively employed, the policy states:
Any designation of beneficiary shall automatically cease to be effective on (i) the date the Employee is transferred to another agency, (ii) the date thirty-one days after the date of cessation of the Employee’s insurance hereunder, or (iii) the date of retirement of the Employee, whichever occurs first. fEmphasis added.]

 See fn. 3, supra.

 See. 14(b), Civil Service Retirement Act, e. 804, 70 Stat. 736, 757.

 In Smith, supra, tile court said (at p. 323) :
Therefore it is the conclusion of this Court that the provisions for automatic cancellation of a designation of beneficiary in the policy here considered, are procedural rather than substantive, and need not be strictly complied with. This is particularly true where, as here, the insurer and the government agencies for whose benefit the provision was written are no longer parties to the proceeding. [Emphasis added.]
In Pahmer, supra, dealing with beneficiary questions under a National Service Life Insurance policy, the court said (at p. 764) :
while the regulations provide that “a change of beneficiary to be effective must be made by notice in writing signed by the insured and forwarded to the Veterans’ Administration”, the eases are clear that this provision is for the protection of the government, and compliance therewith is not essential in determining the rights of adverse claimants where payment has not been made by the government. [Emphasis added.]
In Sears, supra, the court said (at p. 693).:
In the case now before this court, the insurer is no longer a party, and the battle is between possible beneficiaries. Since this is the case, there is no reason to invoke technical provisions designed to protect an insurer against the possibility of double payment.

 It is not 'Contended that the will itsell operated as a designation running to plaintiff.