ALLIED SIGNAL, INC., Appellant,

v.

The UNITED STATES, Appellee.

No. 90-1324.

United States Court of Appeals,
Federal Circuit.

July 29, 1991.

James J. Gallagher, McKenna, Conner & Cuneo, Los Angeles, Cal., argued, for appellant. With him on the brief was Mark R. Troy.

Jane W. Vanneman, Senior Trial Counsel, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for appellee. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen. and David M. Cohen, Director. Also on the brief were Major Pat Vandenbroeke, Dept. of the Air Force, Washington, D.C. and Faith Ford Biggs and Ellie Bomar, Defense Logistics Agency, Dallas, Tex., of counsel.

Before MAYER, PLAGER and RADER, Circuit Judges.

PLAGER, Circuit Judge.

Allied Signal, Inc. (Allied) appeals from the November 1, 1989 decision of the Armed Services Board of Contract Appeals (ASBCA or Board) which granted the government's motion for partial summary judgment. Allied had disputed the government's right to withhold progress payments due under its contract with the government. The government withheld the payments after concluding, in light of a separate dispute with Allied regarding the terms of the contract, that Allied was already overpaid on the underlying contract. We affirm the decision of the ASBCA.

## I. BACKGROUND

In 1982, Allied was awarded a multi-year fixed price contract for development and production of a trainer aircraft engine. The contract included an Economic Price Adjustment (EPA) clause. The EPA clause allowed for adjustment of the target cost and ceiling values, within specified parameters, for fiscal years 1984 through 1988. The contract also included a Defense Acquisition Regulation (DAR) Progress Payment clause.

On August 27 and 28, 1987, the Air Force contracting officer (CO) issued modifications to the contract, reducing the contract price pursuant to the government's inter-

pretation of the EPA clause. Allied disputed the amount of the price adjustments on September 11, 1987.

Soon after, in a letter dated September 23, 1987, the Administrative Contracting Officer (ACO) refused to pay two of Allied's requests for progress payments. The ACO also notified Allied that, as a result of the reduction in contract price, Allied had been overpaid by progress payments already made by the government, and that Allied owed the overpaid amount, plus applicable interest, to the government. On January 28, 1988, Allied submitted a certified claim to the ACO, disputing the refusal to make progress payments. The ACO denied the claim on May 6, 1988. Allied appealed to the ASBCA on July 12, 1988.

In the meantime, on May 2, 1988, Allied submitted to the CO a certified claim disputing the amount of the price adjustment and the government's interpretation of the EPA clause. The CO denied this claim on January 19, 1989. Allied appealed this denial to the ASBCA on April 13, 1989.

In the first appeal before the ASBCA, regarding the withheld progress payments, both parties filed cross-motions for partial summary judgment. The motions dealt with the applicability of the procedural requirements in the Debt Collection Act of 1982, 31 U.S.C. § 3701 *et seq.* (DCA), and DAR Appendix E. These provisions relate to a situation in which the government seeks to collect on a contractual indebtedness by withholding or offsetting amounts otherwise payable under a contract. By decision dated November 1, 1989, the ASBCA granted the government's motion and held that the procedural requirements of neither the DCA nor DAR Appendix E applied. The ASBCA, citing *Fairchild Republic Company,* ASBCA No. 29385, 85–2 BCA (CCH) ¶ 18,047, 1985 WL 16623 (*Fairchild I*), *clarified on reconsideration,* 86–1 BCA (CCH) ¶ 18,608, 1985 WL 17233 (ASBCA 1985) (*Fairchild II*), *appeal dismissed,* 810 F.2d 1123 (Fed.Cir.1987) (*Fairchild III*), reasoned that the withholding of progress payments was an act of contract administration rather than collection of a

debt as contemplated by the DCA and DAR provisions. On advice from both parties, the ASBCA later issued an Order of Dismissal dated February 2, 1990, dismissing the remaining issues in this first appeal as "moot" in light of the November 1 decision. Allied appealed to this court.

## II. ALLIED'S APPEAL

Allied appeals the ASBCA's holding that the DCA and DAR provisions do not apply to the withheld progress payments. Allied's second appeal before the ASBCA, regarding the underlying interpretation of the EPA clause and the concomitant price adjustment, was not yet decided at the time Allied filed the present appeal before this court. The issues in that second appeal to the ASBCA are not now before us.

### A. *Is the Decision of the ASBCA a Final Decision For Jurisdiction Purposes?*

The government argues that we should not reach the merits of this case, citing *Fairchild Republic Company v. U.S.,* 810 F.2d 1123 (Fed.Cir.1987) (*Fairchild III*). In *Fairchild III*, contractor Fairchild appealed to this court from a decision of the ASBCA upholding the government's right to withhold progress payments, and consequently denying Fairchild's motion for summary judgment. The ASBCA held there, as it did here, that the DCA and DAR Appendix E were inapplicable. There, however, the ASBCA had not yet considered a second issue which was before it in the same action—whether the government had properly determined that there was defective pricing by the contractor.

On review, because this court may only review "final decisions", *see United States v. W.H. Moseley Co.,* 730 F.2d 1472, 1474 (Fed.Cir.1984), the court dismissed Fairchild's appeal, without prejudice, on the grounds that the ASBCA decision was not a final decision on all the issues before the Board in that action. 810 F.2d at 1125. Further, in response to an argument that this situation comes under the *Cohen* exception to the usual rule on finality, *see*

*Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949), the court noted that

> Fairchild's claim that the government improperly withheld the amount of the defective pricing is not completely separate from the merits of the claim of defective pricing [—also before the Board in the same proceeding]. Both issues arose out of interrelated conduct and the same or closely connected facts.... Furthermore, Fairchild has failed to indicate any reason why the board's decision on withholding cannot be reviewed at the time a final decision on the defective pricing issue is entered. Whether or not Fairchild prevails on the defective pricing claim, it may then appeal the [then final] ASBCA decision regarding withholding and seek as a remedy interest from the date of withholding for loss of use of its money.

810 F.2d at 1126 (citations omitted). The court also concluded that "a considerable savings in judicial resources can be achieved by waiting to consider both of Fairchild's 'claims' [involved in a single action before the ASBCA] in one appeal [of that action]." 810 F.2d at 1126.

Unlike the setting in *Fairchild,* Allied's claim here regarding withholding has been pursued in a completely separate action from Allied's claim regarding interpretation and application of the EPA clause. Under the facts of this case, Allied's separate pursuit of the two claims was not improper. Although both claims arose substantively out of the same contract, the two claims arose procedurally from two separate and distinct decisions issued by two different COs at two different times. The claims were brought and pursued in separate and distinct appeals to the ASBCA and would therefore normally be expected to result in separate and distinct final decisions by the Board, each of which may be separately appealed to this court. *See* 28 U.S.C. § 1295(a)(10); 41 U.S.C. § 607(g)(1) (1988).

At the conclusion of the ASBCA decision in *Fairchild,* the Board said "[w]e therefore leave the parties where we find them, that is, with the issue of whether defective pricing existed on this contract. [Fairchild]'s motion for summary judgment is denied." By contrast, at the conclusion of the ASBCA decision in Allied's appeal, the Board granted the government's motion for summary judgment, and subsequently dismissed the appeal. As stated in *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945), a final decision is one which "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *See also Fairchild III,* 810 F.2d at 1125; *Teledyne Continental Motors v. United States,* 906 F.2d 1579, 1581 (Fed.Cir.1990); *Teller Environmental Systems v. United States,* 802 F.2d 1385, 1388 (Fed.Cir.1986). Here, the Board's decision had the effect of disposing of the case and ending the litigation on the merits.

The government's assertion that jurisdiction over the issue in the present appeal would not lie in this court unless Allied waited for the ASBCA decision regarding interpretation and application of the EPA clause is incorrect. Allied's appeal now before us arises from a decision of the ASBCA which led directly to the dismissal of all remaining issues in that proceeding. There is no reason to consider the ASBCA decision as anything less than final. The Board's disposition of this first action was a final decision for purposes of our jurisdiction; Allied's appeal of that decision is properly before us. *See* 28 U.S.C. § 1295(a)(10); 41 U.S.C. § 607(g)(1).

### B. *Applicability of the DCA and DAR Provisions*

■ Turning now to the merits of the issue decided by the ASBCA, the DCA was enacted on October 25, 1982, to "facilitate substantially improved collection procedures in the federal government." S.Rep. No. 378, 97th Cong., 2d Sess., *reprinted in* 1982 U.S.Code Cong. & Admin.News 3377, 3377.[1] DAR Appendix E, Part 6 similarly

---

**1.** The following provisions of the DCA are relevant:

§ 3711. Collection and compromise

regulates the ascertainment and collection by the Government of certain contractual debts.[2]

As noted above, in *Fairchild I* (clarified by *Fairchild II*) the ASBCA held that the DCA and DAR provisions did not apply to the Government's withholding of progress payments after its unilateral price reduction. The ASBCA reasoned that no "debt" had been established, as "the amount to be withheld was to come from funds yet to be paid appellant under ... the agreement which involved the alleged defective pricing." 85–2 BCA (CCH) ¶ 18,047 at 90,600. The ASBCA noted that

> a debt does not arise until there is a sum of money or other obligation owed by the purported debtor to his creditor.... Since funds in an amount attributable to the alleged defective pricing data had not

> (a) The head of an executive or legislative agency—
> (1) shall try to collect a claim of the United States Government for money or property arising out of the activities of, or referred to, the agency....
> ....
> § 3716. Administrative offset
> (a) After trying to collect a claim from a person under section 3711(a) of this title, the head of an executive or legislative agency may collect the claim by administrative offset. The head of the agency may collect by administrative offset only after giving the debtor—
> (1) written notice of the type and amount of the claim, the intention of the head of the agency to collect the claim by administrative offset, and an explanation of the rights of the debtor under this section;
> (2) an opportunity to inspect and copy the records of the agency related to the claim;
> (3) an opportunity for a review within the agency of the decision of the agency related to the claim; and
> (4) an opportunity to make a written agreement with the head of the agency to repay the amount of the claim.

"Administrative offset" is defined as "withholding money payable by the United States Government to, or held by the Government for, a person to satisfy a debt the person owes the Government." 31 U.S.C. § 3701(a)(1) (1988).

**2.** DAR Appendix E, Part 6 includes the following:

> Part 6—Contract Debts—Interest—Deferred Payments
> E–600 Scope. This Part provides uniform policies and procedure for the ascertainment and

been paid to appellant, there was no "debt" or obligation owed by appellant to be administratively offset [as provided for by the DCA].

Likewise, the provisions of DAR Appendix E, Part 6, have no application to this situation.... The examples of such indebtedness [covered by the DAR provisions] provided at DAR App. E–601 all cover situations where the "debtor" owes the Government money. Such is not the case here....

....

Had the Government [already paid the full amount], it would be in a position where it would have to seek recovery of overpayments by requesting return of the funds or administrative offset against money payable to appellant. Un-

collection of contract debts.... Except as specified herein, it applies to all indebtedness arising in connection with contracts for procurement of property or services, contracts for sale or use of Government property, and from charges for Government services.

> ....
> E–601 Examples. Indebtedness to the Government occurs in various ways. Examples include:
> ....
> (vii) Retroactive price reductions resulting from contract provisions for price redetermination or for determination of prices under incentive type contracts....
> ....
> E–606.2 Amount Fixed Unilaterally.... At or before the time of making demand (E–608) by a contracting officer, the contracting officer shall make appropriate decision under the Disputes clause of the contract and shall give notice of the opportunity to appeal....
> ....
> E–608 Demand.... Demands shall (i) appropriately explain the indebtedness, (ii) inform the contractor that any amount not paid within 30 days from the date of the demand will bear interest ..., and (iii) notify the contractor that it may submit a proposal for postponement of payments if immediate payment is not practicable or if the amount is disputed....
> ....
> E–610 Withholdings.... Incident to the first demand, and pending the establishment of an agreement for deferment, withholdings of amounts otherwise payable to the contractor may be effected to the extent deemed appropriate to the circumstances of each case....

der those circumstances, the [DCA and DAR provisions] would apply.

85–2 BCA (CCH) ¶ 18,047 at 90,600.

The Claims Court has decided the same issue in a similar context in the same way. In *Avco Corp. v. United States,* 10 Cl.Ct. 665, 667 (1986), the Claims Court concluded that "[t]he kind of debts targeted by the [DCA] are not intra-contractual disputes like [the one at bar]. . . ." The court determined that the DCA does not apply when payment otherwise due on a contract is withheld by the government because of allegedly inadequate performance of the same contract. "Adequate performance [of the contract] was at least an implied condition precedent to defendant's obligation to pay, although the extent of defendant's right to withhold . . . remains to be seen. So there was no debt to trigger the [DCA] and no administrative offset as contemplated by that Act." *Avco,* 10 Cl.Ct. at 667. The court cited with approval the holding in *Fairchild I,* in which the withheld intra-contractual payment was under an express price reduction clause.

We find the reasoning of the Claims Court and the ASBCA persuasive. "Debt" as used in the DCA and DAR provisions contemplates an existing liability by the contractor, rather than a denial of further liability by the Government within an ongoing contract. Analogous to the situation in *Avco,* one can consider Allied's continued entitlement to the progress payments an implied condition precedent to the Government's obligation to continue making those payments. There was no debt to trigger the DCA or DAR provisions and no administrative offset as contemplated by those provisions.

To otherwise construe the provisions would yield strange results. For example, DCA provisions 31 U.S.C. §§ 3711(a)(1) and 3716(a) require a head of an agency to "try to collect a claim" before administrative offset is allowed. Assume a situation similar to the instant case, but one in which the progress payments are found to have been at the appropriate level to date, even though the total contract price has been reduced. The Government now seeks to suspend or reduce future progress payments to account for the reduction in total price. There would not really be any "claim" or "debt" for the Government to try to collect. As to the later-withheld progress payments, the Government simply would not pay the contractor as much as originally calculated. This cannot reasonably be regarded as a "debt" covered by the DCA. To do so would force the Government to *create* a "debt" owed by the contractor simply because the contract price is reduced. This cannot be the result intended by the DCA.

This result—in essence the maintenance of an artificially created "debt"—is basically what Allied asks from this court. We do not believe that that is what the statutes require. The DCA and DAR provisions do not mandate that during ongoing transactions concerning a single contract, progress overpayments become unavailable for credit on behalf of the Government. We agree with the analyses of the ASBCA and the Claims Court in *Fairchild* and *Avco.* The DCA and DAR provisions are clearly meant to facilitate and guide collection of existing debts, not to artificially and unnecessarily create or maintain them. As the ASBCA pointed out, the Government's action here is not the "collection of a debt" as contemplated by the provisions.[3]

## III. CONCLUSION

This court has jurisdiction over Allied's appeal from the decision of the ASBCA

---

**3.** The Government argued in the alternative that, as a matter of statutory construction, the DCA does not apply to contract disputes governed by The Contract Disputes Act of 1978, 41 U.S.C. 601 *et seq.* (CDA). Since we have concluded that the specific DCA provisions cited by Allied would not apply to the Government's withholding of progress payments in this case, we need not decide the broader question.

which issued November 1, 1989 and which led to dismissal on February 2, 1990 of Allied's proceedings before the ASBCA.

For the reasons given, that decision of the ASBCA is

AFFIRMED.