James B. KING, Director, Office
of Personnel Management,
Petitioner,

v.

MERIT SYSTEMS PROTECTION
BOARD, Respondent.

No. 96–3012.

United States Court of Appeals,
Federal Circuit.

Jan. 24, 1997.

Andrea I. Kelly, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., argued, for petitioner. With her on the brief were Frank W.

Hunger, Assistant Attorney General, and David M. Cohen, Director. Of counsel on the brief were Lorraine Lewis, General Counsel, and Earl Sanders, Office of General Counsel, Office of Personnel Management, Washington, D.C.

Eric D. Flores, Office of the General Counsel, Merit Systems Protection Board, Washington, D.C., argued, for respondent. With him on the brief were Mary L. Jennings, General Counsel, and Martha B. Schneider, Assistant General Counsel.

Before ARCHER, Chief Judge, PLAGER, and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

Pursuant to 5 U.S.C. § 7703(d) (1988),[1] James B. King, the Director of the Office of Personnel Management (OPM), petitions for review of the final decision of the Merit Systems Protection Board (Board) in *Lary v. Office of Personnel Management*, 68 M.S.P.R. 206 (1995). In its decision, the Board held that OPM was required to ensure compliance with the procedures governing administrative offsets set forth in the Debt Collection Act of 1982, Pub.L. No. 97–365, 96 Stat. 1749 (1982) (codified at scattered sections of 5 U.S.C., 26 U.S.C., and 31 U.S.C.) (DCA), before a certain sum was deducted from Jacqulyn Lary's refund of her retirement contributions and remitted to the Social Security Administration (SSA) in payment of Old Age, Survivors, and Disability Insurance (OASDI) taxes. The sum in question previously had been erroneously designated as retirement contributions by Ms. Lary's employing agency and therefore had been credited to the Civil Service Retirement and Disability Fund (Fund) instead of being remitted to SSA. We reverse.

1. Citations are to the versions of the statutes and regulations that were in effect at the time the events giving rise to this suit took place.

2. Ms. Lary did not participate in this appeal.

3. A career-conditional appointment is used for positions subject to competitive examinations. Career-conditional employees who complete a required period of service, as prescribed by OPM, may have their employment status converted to a career appointment. 5 C.F.R. § 2.2

## BACKGROUND

### I.

The facts are not in dispute. Ms. Lary[2] was hired by the Department of the Navy (Navy) for a one-year, temporary appointment, starting on October 5, 1981. In December of 1983, she was given another temporary appointment. Subsequently, on February 16, 1984, the Navy changed her employment status to a career-conditional appointment.[3] Upon this appointment, Ms. Lary became qualified for retirement benefits. In that regard, the Navy designated her as being covered by the Civil Service Retirement System (CSRS). She worked under that designation until she resigned from federal employment on August 16, 1993.

Ms. Lary's classification as a CSRS employee for the entire term of her employment was erroneous, however. On June 6, 1986, Congress enacted the Federal Employees' Retirement System Act of 1986, Pub.L. No. 99–335, 1986 U.S.C.C.A.N. (100 Stat.) 514 (FERSA) (codified as amended at 5 U.S.C. §§ 8401–8479 (1988)). In so doing, it created the Federal Employees' Retirement System (FERS) as an alternative to the retirement benefits program existing under CSRS. *Killip v. Office of Personnel Management*, 991 F.2d 1564, 1565 (Fed.Cir.1993). Under FERSA, a federal employee is covered by FERS unless a specific statutory exclusion from FERS applies. *See* 5 U.S.C. § 8331, note (1988). Since none of the exclusions applied to Ms. Lary, after FERSA was enacted, she should have been classified under a CSRS interim system as an interim employee and then automatically converted to FERS coverage when FERS became effective on January 1, 1987.[4]

(1993); *see Hill v. United States*, 571 F.2d 1098, 1100 n. 1 (9th Cir.1978).

4. CSRS interim employees included persons who were first employed in civilian service as career employees after December 31, 1983, and who were slated to become subject to the new retirement system (FERS) when it became effective because no exclusions applied to them. 5 U.S.C. § 8331, note. Ms. Lary was such an employee. Unlike other CSRS employees, interim employees were required to pay OASDI taxes, as ex-

The Navy's incorrect designation of Ms. Lary's employment status after FERSA was enacted led to a corresponding error in the handling of withholdings from her pay. Under CSRS, each pay period the employing agency deducts 7% of the employee's pay,[5] and the entire amount deducted is credited to the Fund as a retirement contribution. 5 U.S.C. § 8334(a) (Supp. V 1993). By contrast, under FERS, while the same 7% is deducted from the employee's pay, about 5.7 to 6.2% of the amount withheld is remitted to SSA in payment of OASDI taxes. 26 U.S.C. §§ 3101(a), 3102(a) (1988). The remaining 0.8 to 1.3% represents a FERS retirement contribution that is deposited into the Fund. 5 U.S.C. § 8422(a)(2) (1988). With differences not relevant for this appeal, see 5 U.S.C. § 8331, note, CSRS interim employees were treated essentially the same as FERS employees for withholding purposes.

Both CSRS and FERS are administered by OPM. 5 U.S.C. §§ 8347(a), 8461(b) (1988). At the time of Ms. Lary's resignation, the Navy submitted to OPM a form titled "Individual Retirement Record" indicating that retirement deductions withheld from her pay under CSRS and credited to the Fund totaled $14,113.98.[6] On August 25, 1993, Ms. Lary applied to OPM for a lump-sum refund of her Fund contributions.[7] Upon review of the pertinent records, however, OPM discovered Ms. Lary's erroneous classification as a CSRS employee and directed the Navy to correct her records to reflect her correct classification and the required withholdings under FERS.

The Navy made the necessary corrections and submitted to OPM a "Notice of Correction of Individual Retirement Record" to correct Ms. Lary's record regarding service and retirement deductions. The Navy also submitted another form, titled "Individual Retirement Record," certifying that the proper retirement deductions withheld under FERS and credited to the Fund totaled $1,966.74.

By letters dated October 26 and December 3, 1993, OPM informed Ms. Lary that the Navy had erred in designating her employment status and that OASDI deductions should have been made to SSA. OPM further informed Ms. Lary that she should fill out the appropriate FERS form to receive her FERS lump-sum refund of $1,966.74. Ms. Lary responded by requesting that OPM issue a reconsideration decision in connection with her request for a refund of retirement contributions under CSRS so that she could file an appeal with the Board. OPM declined to issue such a decision, however, informing Ms. Lary that because the Navy already had sent OPM forms correcting her account, any further questions should be referred to the Navy.

In due course, the Navy sent Ms. Lary a letter in which it explained her erroneous classification as a CSRS employee and the Navy's process for correcting her records to reflect the correct withholdings under FERS. The Navy also enclosed an application for refund of her FERS retirement contributions. Thereafter, Ms. Lary filed an appeal with the Board challenging OPM's action denying her $12,147.24 in retirement contributions. This sum represented the difference between the $14,113.98 erroneously credited to the Fund under CSRS and the lump-sum refund of $1,966.74 to which OPM determined she was entitled under FERS.

## II.

On June 1, 1994, an administrative judge of the Board concluded that the reallocation

---

plained *infra*. In addition, interim employees had credit for service performed after December 31, 1983, and before the earlier of the effective date of FERS or January 1, 1987, transferred to FERS. *See* 5 U.S.C. § 8331, note.

5. Certain categories of employees, not applicable here, have a slightly different percentage withheld.

6. An agency makes periodic payments to the Fund for all of its employees together rather than on an individual basis. This is accomplished by a payment to the United States Treasury which then is credited to the Fund. *See* 5 U.S.C. § 8334(a).

7. Pursuant to 5 U.S.C. § 8342(a) (1988 & Supp. V 1993), if certain requirements are met, an employee separated from service is entitled to a lump-sum refund of his or her retirement contributions.

of Ms. Lary's payroll deductions from CSRS to FERS and the reduction of her lump-sum refund to reflect the payment of OASDI taxes constituted the collection of a debt by administrative offset. Accordingly, he determined, regulations implementing the DCA, including the Federal Claims Collection Standards (Standards), 4 C.F.R. §§ 101–105 (1993), and OPM's applicable regulations, 5 C.F.R. §§ 831.1801–.1808 (1993) for CSRS and 5 C.F.R. §§ 845.401–.408 (1993) for FERS, should have been followed. The AJ found that, contrary to 4 C.F.R. §§ 101.1, 101.2, 102.4 and 5 C.F.R. § 831.1804(b), OPM failed to ensure that the Navy afforded Ms. Lary what he termed "due process" prior to effecting the administrative offset.[8] The AJ ordered OPM to cancel the offsetting of OASDI taxes against Ms. Lary's lump-sum refund and to ensure that DCA procedures were followed before any offset took place.

OPM filed a petition for review pursuant to 5 C.F.R. §§ 1201.114–.115 (1993). Although the Board denied the petition, it reopened the case *sua sponte* pursuant to 5 C.F.R. §§ 1201.116–.117 (1993). *Lary v. Office of Personnel Management*, 65 M.S.P.R. 291, 294 (1994). In its decision, the Board held that the portion of the erroneous CSRS contribution that was equal to the Fund contribution component of FERS ($1,966.74) was properly credited to the Fund even though it had been incorrectly treated as a CSRS rather than a FERS contribution. Therefore, the re-designation of the money to the proper retirement account was not the collection of a debt, but rather was merely an accounting adjustment not subject to administrative offset procedures.

The Board also held, however, that the portion of the erroneous CSRS contribution that should have been sent to SSA to pay OASDI taxes under FERS (i.e. $12,147.24) was due and payable to Ms. Lary from the Fund. Consequently, the Board reasoned, DCA procedures should have been followed before OPM denied Ms. Lary's request for a lump-sum payment of what she contended were retirement contributions. The Board

directed OPM to recredit Ms. Lary's retirement account with the money that OPM argued was due on account of OASDI taxes.

OPM then sought reconsideration from the Board pursuant to 5 U.S.C. § 7703(d) (1988). In response, the Board issued its final decision on July 13, 1995, in which it denied OPM's motion for reconsideration, re-opened the case *sua sponte* to consider new arguments by OPM, and affirmed its earlier decision. The Board again held that Ms. Lary was entitled to the money credited to the Fund that should have been sent to SSA to satisfy OASDI taxes under FERS, unless the Navy complied with the DCA's administrative offset procedures. This appeal by OPM followed.

## DISCUSSION

■ We must set aside a decision of the Board if it is found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1988). On questions of statutory interpretation, the Board's decision is reviewed *de novo*. *King v. Reid*, 59 F.3d 1215, 1217 (Fed.Cir.1995); *Rosete v. Office of Personnel Management*, 48 F.3d 514, 517 (Fed. Cir.1995). The issue before us is one of statutory interpretation: whether OPM and the Navy were required to follow DCA procedures for administrative offsets before using the $12,147.24 that was erroneously credited to Ms. Lary's retirement account under CSRS to satisfy OASDI taxes due and owing under FERS. For the reasons which follow we hold that the DCA does not apply in this case. Accordingly, OPM and the Navy were not required to follow DCA procedures in satisfying the obligation to pay OASDI taxes that arose from Ms. Lary's employment with the Navy. Thus, we reverse the decision of the Board.

8. Generally, the cited regulations provide that an agency must follow specific requirements before collecting debts by administratively offsetting money due and payable to a debtor from the Fund.

## I.

The DCA was the result of "increasing concern ... expressed in Congress and elsewhere over the increasing backlog of unpaid debts owed the federal government." S.Rep. No. 97–378, at 2 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3377, 3378. The DCA was promulgated to facilitate improved debt collection procedures in the government. The statute provides various mechanisms to promote improved debt collection that previously were not available to the government, including reporting delinquent debtors to credit bureaus, obtaining addresses of delinquent debtors from the Internal Revenue Service, and utilizing private collection agencies for collection services. *See* S.Rep. No. 97–378, at 1–2, 1982 U.S.S.C.A.N. at 3377–78. One method identified in the DCA for collecting debts owed by federal employees to the government—and the one at issue in this case—is administrative offset.

Administrative offset is defined in 31 U.S.C. § 3701(a)(1) (1988) as "withholding money payable by the United States Government to, or held by the Government for, a person to satisfy a debt the person owes the Government." The term "debt" is defined by the Standards as "an amount of money or property which has been determined by an appropriate agency official to be owed to the United States from any person...." 4 C.F.R. § 101.2 (1993). OPM's regulations implementing the DCA define "debt" as:

> an amount owed to the United States on account of loans insured or guaranteed by the United States, and other amounts due the United States from fees, duties, leases, rents, royalties, services, sales of real or personal property, overpayments, fines,

penalties, damages, interests, taxes, forfeitures, etc.

5 C.F.R. § 831.1803.

Prior to collecting a debt by administrative offset, an agency must follow the steps set forth in 31 U.S.C. § 3716(a) (1988):

> (a) After trying to collect a claim from a person under section 3711(a)[9] of this title, the head of an executive or legislative agency may collect the claim by administrative offset. The head of an agency may collect by administrative offset only after giving the debtor—
>
> (1) written notice of the type and amount of the claim, the intention of the head of the agency to collect the claim by administrative offset, and an explanation of the rights of the debtor under this section;
>
> (2) an opportunity to inspect and copy the records of the agency related to the claim;
>
> (3) an opportunity for review within the agency of the decision of the agency related to the claim; and
>
> (4) an opportunity to make a written agreement with the head of the agency to repay the amount of the claim.

For purposes of section 3716, the term "claim" is defined as including "amounts owing on account of loans insured or guaranteed by the Government and other amounts due the Government." 31 U.S.C. § 3701(b) (1988).[10] OPM's regulations define "debtor" as "a person who owes a debt, including an employee, former employee, Member, former Member, or the survivor of one of these individuals." 5 C.F.R. § 831.1803 (1993).

The Standards specify the procedures to be followed when an agency seeks to collect a

---

**9.** 31 U.S.C. § 3711(a) (1988) provides that:

The head of an executive or legislative agency -
(1) shall try to collect a claim of the United States Government for money or property arising out of the activities of, or referred to, the agency;
(2) may compromise a claim of the Government of not more than $100,000 (excluding interest) or such higher amount as the Attorney General may from time to time prescribe that has not been referred to another executive or legislative agency for further collection action; and

(3) may suspend or end collection action on a claim referred to in clause (2) of this subsection when it appears that no person liable on the claim has the present or prospective ability to pay a significant amount of the claim or the cost of collecting the claim is likely to be more than the amount recovered.

**10.** The Standards state that "claim" is interchangeable with "debt" and therefore has the same definition as debt. *See* 4 C.F.R. § 101.2.

debt by administrative offset against amounts payable from the Fund. Section 102.4 of the Standards provides in pertinent part as follows:

(a) Unless otherwise prohibited by law, agencies may request that moneys which are due and payable to a debtor from the Civil Service Retirement and Disability Fund be administratively offset in reasonable amounts in order to collect in one full payment or a minimal number of payments debts owed to the United States by the debtor. Such requests shall be made to the appropriate officials of the Office of Personnel Management in accordance with such regulations as may be prescribed by the Director of that Office.

(b) When making a request for administrative offset under paragraph (a) of this section, an agency shall include a written certification that:

(1) The debtor owes the United States a debt, including the amount of the debt;

(2) The requesting agency has complied with the applicable statutes, regulations, and procedures of the Office of Personnel Management; and

(3) The requesting agency has complied with the requirements of § 102.3[11] of this part, including any required hearing or review.

4 C.F.R. § 102.4 (1993).

## II.

■■ The foregoing makes it clear that, in order for the DCA to be applicable in a given situation, the government must have a "claim" against a "debtor" as a result of a "debt" owed the United States. In this case, that requirement is not met. To begin with, as indicated by the definition in the Standards (4 C.F.R. § 101.2) and in OPM's regulation (5 C.F.R. § 831.1803), a debt generally requires some sum of money or other obli-

gation owed by a person to a creditor. *See Allied Signal, Inc. v. United States,* 941 F.2d 1194, 1197 (Fed.Cir.1991). Ms. Lary, however, owes no money to the United States. The reason is that, during the relevant period of time, the total correct amount of money was withheld from her pay. As noted above, under the CSRS, FERS, and CSRS interim systems, the employing agency withheld a total of seven percent of an employee's pay. That total amount was withheld from Ms. Lary's pay. However, as a result of the Navy's error in not converting Ms. Lary to FERS coverage, there was an incorrect allocation of the withheld money within the government. In short, the error in this case lay in allocation rather than in withholding. Even under a correct classification (FERS), the same seven percent would have been withheld from Ms. Lary's pay. Thus, because there is no conceivable way in which Ms. Lary could be said to owe money to the United States, she is not a "debtor" against whom the government has a "claim."[12]

■ Furthermore, as seen above, the DCA defines "administrative offset" as "withholding money payable by the United States Government to, or held by the Government for, a person to satisfy a debt the person owes the Government." 31 U.S.C. § 3701(a)(1). By the same token, under the Standards, the money an agency wishes to collect from the Fund by administrative offset must be "due and payable to [the] debtor" from the Fund. 4 C.F.R. § 102.4. OPM argues that to be "payable"—and thus subject to administrative offset procedures under the DCA—the money at issue must have been properly credited to the Fund, so that it can be said that Ms. Lary is entitled to it. We agree. The statute and regulations compel the conclusion that a prerequisite to applying the administrative offset procedures of

11. Section 102.3 requires, *inter alia,* that agencies establish procedures for providing a debtor appropriate procedural rights before collecting a debt by administrative offset. Such procedures must include certain stated requirements, which track those found in 31 U.S.C. § 3716(a).

12. Pursuant to 26 U.S.C. § 3102(a) (1988), an employer is responsible for withholding OASDI taxes from an employee's pay. Once such money

is withheld, the amount withheld is "credited to the employee regardless of whether [it] is paid by the employer, so that the IRS has recourse only against the employer for [its] payment." *Slodov v. United States,* 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978). Thus, it is the employer, not the employee (in this case, Ms. Lary), who is liable for the taxes. *Id.*

the DCA is that the "debtor" have a valid interest in the moneys being offset. It is undisputed that Ms. Lary never was entitled to the money equal to OASDI taxes that was erroneously credited to the Fund. Therefore, she plainly did not have a valid interest in the money. Thus, the money credited to the Fund equal to the OASDI taxes that should have been paid to SSA was neither "payable" by the government to Ms. Lary nor "due and payable" to Ms. Lary from the Fund.

Moreover, steps that must be followed before collecting a debt by administrative offset that are specified in the DCA could not be implemented in this case. For one thing, as seen above, the term "claim" appears in all of the steps set forth in 31 U.S.C. § 3716(a). The present case, however, involves no "claim." Contrary to the definition of "claim" in 31 U.S.C. § 3701(b), as far as Ms. Lary is concerned, there are no "amounts owing on account of loans insured or guaranteed by the Government," and there are no "other amounts due the Government" from Ms. Lary. In addition, pursuant to 31 U.S.C. § 3716(a)(4), a debtor must be given "an opportunity to make a written agreement with the head of the agency to repay the amount of the claim." Since Ms. Lary is not indebted to the government, there is no government "claim" that could be the subject of the repayment agreement contemplated by the statute.

Finally, our conclusion that the DCA does not apply in this case also is supported by legislative history. The legislative history states that offset procedures are designed to reach general debts owed the government, such as for student or other government loans, erroneous payments to employees, overpayment of benefits such as education benefits, and indebtedness arising from salary or other allowances. S.Rep. No. 97–378, at 11, 23 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3377, 3387, 3399; *see also* S.Rep. No. 97–287, at 15 (1981), *reprinted in* 1982 U.S.C.C.A.N. 3413, 3426. Plainly, such indebtedness does not exist in this case.

Nevertheless, the Board argues that the Navy made an "overpayment" of benefits to the Fund on behalf of Ms. Lary and that this overpayment fits the definition of "debt" under the pertinent regulations. The Board points out that the definition of "debt" in 5 C.F.R. § 831.1803 (OPM's regulations) includes amounts owed the United States based on, *inter alia,* "overpayments." From this, the Board contends that an overcredit to the Fund is "an amount of money" determined "to be owed the United States" and therefore is a "debt" under 4 C.F.R. § 101.2(a) (the Standards). Thus, the Board argues, administrative offset procedures must be followed before the amount erroneously credited to the Fund can be withheld from Ms. Lary.

The contention is without merit. Quite simply, what happened here was that an amount of money equal to OASDI taxes that were due and owing was credited to the Fund as the result of the Navy's incorrect classification of Ms. Lary as a CSRS employee. There was no miscalculation of benefits to which Ms. Lary was otherwise entitled, which would constitute an "overpayment" to her. Furthermore, the Board's position fails to address both the requirement of 31 U.S.C. § 3701(a)(1) that the money be "payable" to the debtor and the language of 4 C.F.R. § 102.4 which states that the money be "due and payable" to the debtor from the Fund. As discussed above, these sections require that the debtor be entitled to the money that is to be administratively offset. No such entitlement exists in this case.

■ In sum, the DCA does not apply to Ms. Lary's situation. No one disputes the fact that Ms. Lary should have been classified as a FERS employee. Therefore, she is not entitled to money erroneously credited to the Fund as a retirement contribution under CSRS that should have been remitted to SSA in payment of OASDI taxes under FERS. Withholding this money from Ms. Lary's lump-sum refund does not represent the collection of a debt by the government.[13]

---

**13.** To the extent that Ms. Lary believes her employer withheld an incorrect amount for OASDI taxes, that is a matter that should be pursued with the Navy. *See* 26 C.F.R. §§ 601.103(c), 601.106 (1993).

## CONCLUSION

For the foregoing reasons, the decision of the Board is reversed.

## COSTS

Each party shall bear its own costs.

*REVERSED.*