**Michael GARCIA, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV. A. 97–1698(JR).**

United States District Court,
District of Columbia.

March 9, 1998.

Thomas J. O'Rourke, Shaw, Bransford & O'Rourke, Washington, DC, for Plaintiffs.

Meredith Manning, Assistant U.S. Attorney, Washington, DC, for Defendant.

## *MEMORANDUM*

ROBERTSON, District Judge.

Plaintiffs are five federal workers who were mistakenly permitted to remain enrolled in the Civil Service Retirement System

("CSRS") after the Federal Employee Retirement System ("FERS") replaced CSRS in 1987. The Office of Personnel Management corrected the errors between 1994 and 1996, but plaintiffs claim that the corrections were insufficient to make them whole for financial losses they suffered, and they have sued for compensation. Defendant moves to dismiss all of plaintiff's claims, which are brought under the Back Pay Act, the Tucker Act, and two sections of subchapter III of the FERS Act (the Thrift Savings Plan Act). For the reasons stated below, the motion to dismiss will be granted.

## Background

CSRS and FERS both allow employee contributions to the federal Thrift Savings Plan ("TSP"), but employees enrolled in FERS may set aside more savings than under CSRS. Under CSRS, a federal employee: (1) must contribute 7 percent of base pay into the CSRS fund, which pays an annuity on retirement; and (2) may contribute an additional amount of up to 5 percent of base pay tax-free into the TSP, which can either supplement the CSRS annuity on retirement or be paid out in a lump sum when the employee's government service is over. The employee enrolled in CSRS pays no Old Age, Survivor, Disability Insurance ("OASDI") tax and receives no OASDI benefits. Under FERS, a federal employee: (1) pays a 6.2 percent Social Security tax (including OASDI) and contributes .8 percent of his or her income into a FERS fund, both of which pay an annuity; (2) receives a 1 percent automatic contribution from his or her agency-employer to the TSP; (3) may contribute to the TSP up to 10 percent of his or her base pay, within the statutory $10,000 a year deferral limit; and (4) may receive matching TSP contributions from the agency-employer of up to 4 percent of the employee's base pay.

While they were enrolled in CSRS, each plaintiff had, in effect, two pools of money. The first pool was the 7 percent contribution to the CSRS fund. When each plaintiff was transferred to FERS, the government put the portion of that pool that represented .8 percent of each employee's income into the FERS fund. The rest, representing 6.2 percent, was allocated to pay the Social Security/OASDI taxes that would have been paid had the government correctly classified these plaintiffs as FERS participants. Plaintiffs claim that the government was wrong in taking any of this money to pay back taxes.

The second pool of money each employee had under CSRS was the money the employee chose—if he or she so chose [1]—to deposit in the TSP, plus earnings on that money. Under the applicable federal laws and regulations, discussed below, that money was transferred to a new TSP account when the employee was transferred to FERS. The agency-employer was required to, and did, make up the matching contributions that it would have made had the employee been in FERS all along. Plaintiffs were also entitled to receive, and did receive, amounts representing lost earnings on the agency's make-up matching payment. These plaintiffs' only claim regarding this second pool of TSP money is that they were deprived of the "right to plan intelligently for retirement" because, had they been correctly placed in FERS when they should have been, they would have made larger contributions to the TSP. Compl. ¶¶ 39–40.

## Analysis

When it switches an employee from one system to another, the government must comply with 5 U.S.C. § 8432a (1993) and 5 C.F.R. §§ 1605.4 & 1605.11 (1993).[2] These regulations govern the way employees who were misclassified, and their agencies, can make up the difference between the TSP payments allowed in CSRS and those allowed in FERS. An employee who is switched from one plan to another to correct a misclassification "shall be given the opportunity to make

---

1. Plaintiffs do not actually allege that they have made allowable TSP contributions under the CSRS plan.

2. These regulations were expanded and recodified in 1997 at 5 C.F.R. § 1605 *et seq.* (1997). The new regulations are more detailed than the old ones and reflect longstanding agency interpretation of the old regulations. *See* 61 Fed.Reg. 68472 (1996). The government in this case cites to the new regulations to describe its duties to the plaintiffs. *See* Def. Motion at 12–15.

any elections ... in the same manner the employee could have chosen had the erroneous classification not occurred." 5 C.F.R. § 1605.11. When an employee whose TSP payments were capped at 5 percent of her back pay under CSRS is switched from CSRS to FERS, and she wants to take advantage of the opportunity to deposit 10 percent under FERS, she may schedule make-up payments upon her reclassification. The agency-employer then must match these payments (up to the statutory 4 percent). 5 C.F.R. § 1605.4; *see also* 5 C.F.R. § 1605.5 (1997). The agency-employer must also make up, in a lump sum, the 1 percent mandatory payment to the TSP it would have been making had the employee been correctly classified. 5 C.F.R. § 1605.4. The Thrift Savings Plan Technical Amendments of 1990, 5 U.S.C. § 8432a, also provide for the government to pay lost earnings, but only on the 1 percent automatic contribution and any matching contribution the agency-employer should have made.[3] The Technical Amendments *do not* allow for the payment of lost earnings on any voluntary contributions the employee claims she would have made to the TSP but for government error. 5 U.S.C. § 8432a(2).

### 1. The FERS Act

The Thrift Savings Plan Act, 5 U.S.C. § 8477(e)(3)(C)(i), creates a cause of action by any participant or beneficiary

> to recover benefits of such participant or beneficiary under the provisions of subchapter III of this chapter [the Thrift Savings Plan Act], to enforce any right of such participant or beneficiary under such provisions, or to clarify any such right to future benefits under such provisions; ...

This provision contains no explicit waiver of the government's sovereign immunity to actions for money damages, and, in fact, money damage awards are expressly prohibited by 5 U.S.C. § 8477(e)(5). But, as the government concedes, this section does create a cause of action for beneficiaries to sue to recover lost benefits, or to enforce or clarify rights.

■ The government's motion to dismiss under this section of the FERS Act must nevertheless be granted because plaintiffs have failed to identify any "benefits" or "rights" of which they were deprived. Government counsel asserted at oral argument, and plaintiff's counsel did not deny, that all the plaintiffs have been given matching agency-employer payments and lost earnings as required by 5 C.F.R. §§ 1605.4, 1605.11 and the applicable 1997 regulations.

■ Plaintiffs' argument that the reallocation of their CSRS fund money to pay OASDI back taxes violated their "rights" under the FERS Act is refuted by case law. *See King v. Merit Systems Protection Bd.,* 105 F.3d 635, 641 (Fed.Cir.1997) (federal employees are "not entitled to money erroneously credited to the Fund as a retirement contribution under CSRS that should have been remitted to [the Social Security Administration] in payment of [Social Security] taxes under FERS"). Any other rule, indeed, would result in a windfall to plaintiffs.

■ The FERS Act also creates a cause of action by any participant or beneficiary

> to enforce any claim otherwise cognizable under sections 1346(b) and 2671 through 2680 of title 28 [the Federal Tort Claims Act], provided that the remedy against the United States provided by sections 1346(b) and 2672 of title 28 for damages for injury or loss of property caused by the negligent or wrongful act or omission of any fiduciary while acting within the scope of his duties or employment shall be exclusive of any other civil action or proceeding by the participant or beneficiary for recovery of money by reason of the same subject matter against the fiduciary (or estate of such fiduciary) whose act or omission gave rise to such action or proceeding, whether or not such action or proceeding is based on an alleged violation of subsection (b) or (c).

---

**3.** Lost earnings are calculated by using either the participant's investment fund election in place at the time the original contributions would have been made, or by defaulting to the "G" fund, the most conservative investment option for participants. 5 C.F.R. §§ 1605.5(a)(2) & 1605.2(c)(8) (1997).

5 U.S.C. § 8477(e)(3)(C)(ii). The government's threshold argument with respect to plaintiff's claim under this provision is that breach of fiduciary duty, which plaintiffs appear to allege, *see* Pltf. Opp. Brief at 20, sounds in the law of trusts and is not a "tort" in the District of Columbia. That argument is erroneous. *See, e.g., Beckman v. Farmer,* 579 A.2d 618 (D.C.1990).

■ Nonetheless, plaintiffs have failed to state a claim under this section. The statute defines "fiduciary" for purposes of this section to include only "Members of the Thrift Savings Plan Board and the Board's Executive Director." § 8477(e)(4)(G). Plaintiffs have not alleged—nor could they allege, given the facts presented—that any member of the Thrift Savings Plan Board, or the Board's Executive Director, was in any way responsible for the losses that they claim to have suffered.

### 2. The Back Pay Act

■ Plaintiffs cannot state a cause of action under the Back Pay Act, 5 U.S.C. § 5596 (1993). Their argument that the Technical Amendments in some way extend the Back Pay Act's coverage to claims brought under the FERS Act has no merit. If it can be said that the Technical Amendments are related to the Back Pay Act at all, it is only because the Amendments were aimed at giving OPM the power it lacked under any other statute, including the Back Pay Act, to enact regulations governing situations like the one at bar. *See* H.R. Rep. 101–452, *reprinted in* 1990 U.S.C.C.A.N. 250. The Back Pay Act requires plaintiffs to show they were subject to unwarranted personnel actions. It is inapplicable where, as here, an employee's claim is merely that the government owes her money. *See, e.g., Bell v. United States,* 23 Cl.Ct. 73 (1991).

### 3. The Tucker Act

■ Plaintiffs also purport to bring their claims under 28 U.S.C. § 1346(a)(2), called the "Little" Tucker Act, which grants concurrent jurisdiction to district courts and the Court of Federal Claims over suits against the United States for non-tax, non-tort claims of less than $10,000. Plaintiffs have not stated the amount of money they are claiming, and plaintiffs' counsel declined to do so at oral argument. Even if this court could exercise jurisdiction over these claims, "[t]he Tucker Act, of course, is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Because plaintiffs cannot assert any substantive rights under the FERS Act or the Back Pay Act, plaintiffs' claim to jurisdiction based on the Little Tucker Act must also fail.