**Mrs. Emma G. BARNES, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 16539.**

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 9, 1961.

Decided May 24, 1962.

Mr. Russell Hardy, Sr., Washington, D. C., with whom Mr. Russell Hardy, Jr., Washington, D. C., was on the brief, for appellant.

Mr. Robert Brewer Norris, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Nathan J. Paulson and Mrs. Ellen Lee Park, Asst. U. S. Attys., were on the brief, for appellee. Messrs. Charles T. Duncan, Principal Asst. U. S. Atty., and Donald S. Smith, Asst. U. S. Atty., also entered appearances for appellee.

Before WASHINGTON, DANAHER and BURGER, Circuit Judges.

DANAHER, Circuit Judge.

Appellant in the District Court asserted in detail which we will mention, that certain sums became due from the

Government to her upon the death of her late husband, a former Government employee. Her claims allegedly were derived under a group life insurance contract which had been entered into between Metropolitan Life Insurance Company and the United States Civil Service Commission, and from provisions of the "Federal Employees' Group Life Insurance Act of 1954."[1] The Government filed its answer, pleading in essence, that appellant's husband was not insured at the date of his death and that the United States had not consented to the suit. The District Court denied appellant's motion for summary judgment and granted the Government's cross motion which was based upon the certified record of the Civil Service Commission, the pleadings and sworn answers to interrogatories. This appeal followed.

Appellant is the widow of the late Warren W. Barnes who died October 9, 1959 in the District of Columbia. In the first count of her complaint, she alleged that: her late husband had had more than twelve years' creditable service as a Government employee; the decedent at the time of his death was insured in the amount of $11,000 under a group insurance policy "procured by the United States Civil Service Commission" in accordance with the Act; after notice of death had been given and request for payment had been made to the Government, the Government had refused to make payment of the claimed death benefit; and judgment for $11,000 was prayed.

In a second count appellant alleged that: her deceased husband after employment of many years had been separated from Government service on April 4, 1959; he then was insured in the amount of $11,000 payable at his death to his widow "by a group insurance policy procured" by the Civil Service Commission under the Act which "required" the insurance to be paid to appellant; the Act "required" that the insurance policy on such an employee must provide that the insurance should cease upon his separation from service, and thereupon provide for conversion to an individual policy; the Act had given Barnes the privilege of converting his insurance to an individual policy in the amount of $2,250; appellant's decedent was physically and mentally disabled on April 4, 1959 and continuously thereafter until his death the following October; after April 4, 1959, Barnes had been incapable of making any decision, election or application for the conversion of his insurance; the Government had "failed to inform" appellant's decedent of "the privilege to convert the insurance to an individual policy"; on or about May 5, 1959, the Government had "terminated, cancelled and forfeited said insurance" and had failed to make payment to the appellant as beneficiary of the sum of $2,250 for which judgment was asked.

Neither count cites reference to any statute authorizing the action. Simply in conclusory terms as may be seen above, the first count alleges that Barnes was insured at the time of death "by" a policy procured "in accordance with" the Act, and that the Government after notification of the death and service of a demand by appellant, had refused to pay her $11,000.

The second count recognizes that whatever insurance Barnes had up to April 4, 1959, when he retired, thereupon "should cease." Liberally construing the remaining allegations, the pleader says that the Act made provision for conversion of which advantage was not taken for the reasons outlined. Appellant thus seems to be saying she intended to spell out a duty upon the *Government* to see to it that Barnes would be and should have been covered, but was not.

Following argument here, respective counsel were asked by the court, *sua sponte*, to respond to certain inquiries. The Government for the first time thereupon asserted in its memorandum of re-

---

1. Hereinafter referred to as the Act. 68 Stat. 736 (1954), as amended, 5 U.S.C.A. §§ 2091–2103, as amended, 5 U.S.C.A. §§ 2091(d), 2092(d), 2094(a), 2095.

ply that the District Court had lacked jurisdiction "because this is an unconsented suit against the United States." It thereupon prayed that the judgment of the District Court be vacated and the case be remanded with the direction that the complaint be dismissed without prejudice. We turn first to the jurisdictional question thus posed.

Read as pertaining to times here critical, the Act in terms is clearly intended to apply to such Government employees as may by regulation prescribed by the Civil Service Commission "come within the purview of this [Act]." 5 U.S.C.A. § 2091. Each employee to whom the Act applies "shall be eligible to be insured" for group life insurance in amounts set forth in a governing table plus an equal amount of group accidental death and dismemberment insurance. 5 U.S.C.A. § 2092(a). It is provided that the diminishing amounts of insurance in force as to employee after age 65 should become not less than 25% of the otherwise applicable amounts. 5 U.S.C.A. § 2092(d). The Act spells out the order of precedence with respect to the payment of death benefits. 5 U.S.C.A. § 2093.

The Act authorized the Civil Service Commission to purchase "a policy or policies of group life and accidental death and dismemberment insurance to provide the benefits specified in this [Act]." 5 U.S.C.A. § 2096(a). Each employee "insured under such policy" is to receive a certificate setting forth certain required information. 5 U.S.C.A. § 2098. The Commission was authorized, additionally, "to promulgate such regulations as may be necessary and proper to give effect to the intent, purposes, and provisions of this [Act]." 5 U.S.C.A. § 2100.

Section 2103 of the Act specifically provides that "The district courts of the United States shall have original jurisdiction, concurrent with the Court of Claims, of any civil action or claim against the United States founded upon this [Act]." [2]

We think it clear that the United States has consented to be sued for any breach of legal duty owed by it under the Act. Regardless of whether or not any such suit might have been predicated upon the provisions of the Tucker Act,[3] Congress recognized that questions of coverage and other substantive issues in varying situations and circumstances, might involve amounts ranging from $10,000 to $20,000, obviously in excess of the Tucker Act limitation. The Senate Committee on Post Office and Civil Service stated in its report that

"Sec. 14 (5 U.S.C. § 2103) would clarify the rights of claimants who may wish to make the United States a party to a court action involving a claim under the program. This section would extend the jurisdiction of United States District Courts above the $10,000 limitation now in effect." S.Rep.No.1654, 83d Cong., 2d Sess. 4–5 (1954), U.S.Code Cong. & Admin.News 1954, p. 3052.

Thus, irrespective of amount, the District Courts were granted jurisdiction over civil actions or claims "founded upon" the Act. The United States has consented to be sued, we conclude, to the extent that any such civil action or claim can be shown to involve some right created by this Act and a breach by the

2. The Civil Service Commission as authorized issued regulations applicable to "Group Life Insurance," 5 C.F.R. §§ 37.1–37.11 (1961). Sec. 37.11 in pertinent part provides:
"Group life * * * benefits shall be payable in accordance with a policy or policies purchased by the Commission pursuant to the [Act] * * * The Commission will furnish the name and address of the insuring company upon the written request of an employee or beneficiary. Actions at law or in equity to recover on an insurance policy, in which there is not alleged any breach of any obligation undertaken by the United States, should be brought against the insurance company." And see Railsback v. United States, 181 F.Supp. 765 (D.Neb. 1960).

3. 28 U.S.C. § 1346(a) (2) (1958).

Government of some duty with respect thereto.

■ To say that in proper circumstances the Government has consented to be sued is all well enough. There still remains the very real problem of substantive liability, granting that suit has been permitted. With this aspect in mind, we have carefully examined the record.

Metropolitan Life Insurance Company as of November 24, 1954 executed its group policy No. 17,000–G in favor of United States Civil Service Commission as the policyholder, "pursuant to the Federal Employees' Group Life Insurance Act of 1954." As an eligible employee, Barnes became "automatically insured" as provided in 5 U.S.C.A. § 2094(a), with the effective date, August 29, 1954. At that time, he was more than 68 years of age, so that in accordance with the provisions of 5 U.S.C.A. § 2092(d), his life was insured for $2,250. Because of his age, Barnes then made no contribution and was not thereafter required to pay a premium while he continued in Government employment.

5 U.S.C.A. § 2095(a) provides that each policy purchased under the Act shall contain a provision that insurance on any insured employee

> "shall cease upon his separation from the service or twelve months after discontinuance of his salary payments, whichever first occurs, subject to a provision which shall be contained in the policy for temporary extension of coverage and for conversion to an individual policy of life insurance under conditions approved by the Commission."

As authorized, the Commission by regulation [4] provided that the insurance of an insured employee shall *cease* on the date of his separation from the service, subject to extension of his life insurance coverage for a period of 31 days thereafter. The regulations further provided [5] that during that 31-day extension of life insurance coverage, "an *individual* may, *upon application* * * * convert all or any part of his group life insurance to an individual policy of life insurance at rates applicable to his attained age and class of risk." (Emphasis supplied.)

The group policy in its section 3, dealing with an employee situated as was Barnes, likewise provided that the insurance "shall automatically cease" on the date of his separation from the service. The policy in section 6 further provided that any employee whose life insurance ceased in accordance with section 3

> "shall be entitled to have issued to him * * * an individual policy of life insurance only * * * subject to the following conditions and provisions:
>
> "(A) *written application for such individual policy* and payment of the first premium thereon shall be made *within thirty days after such cessation* (or within such longer period as the Office may allow) to the insurance company * * *." (Emphasis supplied.)

The amount of insurance which might thus become available was to be equal to the amount for which the employee had been covered on the date of the cessation of his service. If Barnes had died during the 31 days following the cessation of his life insurance under the policy and under the Act, payment of the amount insured would have been made to his beneficiary of record, whether or not a written application for the individual policy or payment of the first premium had been made.[6]

Such was the status of insurability when Barnes filed an application dated March 3, 1959, for retirement from his post of accountant in the New York Regional Renegotiation Board. He certified in writing subject to penalty for intentional falsification, that all statements in

4. 5 C.F.R. § 37.5(b) (1961).

5. Id. § 37.5(g).

6. He did not die until October 9, 1959.

his application were true, as he sought retirement with a date of final separation fixed at April 4, 1959. Supplying information required in various pertinent respects, Barnes answered item 13 which was applicable only to "applicants for disability retirement."

Thus 13(a) reads: "When did you become totally disabled? (month and year." Barnes answered "Not applicable." 13(b) reads: "Briefly describe your disabilities, when and how incurred, and how they interfere with performance of the duties of your office." Barnes answered "Not applicable."

The administrative record further discloses that before Barnes retired, his superiors had orally explained to him the possibility of converting his Government insurance to an individual policy. His retirement became effective April 4, 1959. As of April 8, 1959, the director of the division of administration in his post of employment forwarded his retirement papers to Barnes. On her covering memorandum of transmittal she wrote "Do remember to check on your insurance within the 30 day limit—'Dottie.'"

The record, totally uncontroverted, demonstrates that Barnes' superiors in the office of his employment had advised him of his rights. He filed no application for conversion of his insurance to an individual policy during the 31-day period of his temporary coverage. He paid no premium as consideration for coverage under an individual contract. His insurance, so far as the Government was concerned, terminated as of May 5, 1959.

Even as we have sympathetically studied the Act, the regulations and the administrative record, the interrogatories and the answers thereto and all other material available, we are bound to find that there is no basis for a conclusion that the Government failed in the performance of any duty arising under the Act.

Appellant's claim that actually Barnes had failed to apply for conversion of his coverage because of disability adds nothing to his assertion of liability on the part of the Government. There is no requirement, explicit or otherwise, that any Government officer or agent act in behalf of the employee to secure for him the protection which, under applicable law, he should have secured either by himself or through one lawfully acting in his behalf.

Moreover, he had not retired for disability, nor had he completed 15 years of creditable service so as to bring him within the provisions of 5 U.S.C.A. § 2095(b).

At the time Barnes' "insurance would otherwise cease" he was not receiving benefits under the Federal Employees' Compensation Act because of disease so as to bring him within the provisions of 5 U.S.C.A. § 2095(c).

Thus we find no genuine issue of material fact with respect to any alleged breach of duty on the part of the Government, and accordingly agree with the conclusion of the District Judge that the Government was entitled to judgment as a matter of law. It follows that the appellant has here failed to state a claim against the United States upon which relief may be afforded, and the order of the District Court dismissing the action is

Affirmed.

BURGER, Circuit Judge (concurring).

I concur in affirming the judgment of the District Court but I do so on jurisdictional grounds. As I see it the United States has not consented to suit for the proceeds of insurance policies under the Federal Employees' Liability Insurance Act. Absent consent neither this court nor the District Court has jurisdiction. The majority concludes that "the United States has consented to be sued * * * *to the extent* that any such civil action or claim can be shown to involve some right created by this Act and a breach by the Government of some duty with

respect thereto." (Emphasis added.) Assuming, *arguendo*, that consent to suit can be so qualified, the fact is that the majority finds that the Government has *not* failed "in the performance of any duty arising under the Act," and hence the conclusion must be that no consent to suit has been given, and jurisdiction is therefore lacking. Appellant's remedy, whatever it may be, is not by way of a suit against the United States.