Per Curiam:
This case was referred pursuant to Rule 37(e) to Herbert N. Maletz, a trial commissioner of this court, with, directions to mate his recommendation for conclusion of law on plaintiff’s and defendant’s motions for summary judgment. The commissioner has done so in an opinion filed January 22,1963, wherein he recommended that the defendant’s motion for summary judgment be granted, plaintiff’s motion for summary judgment be denied and plaintiff’s petition be dismissed. It appears to the court that plaintiff has failed to file a request for review by the court of the commissioner’s recommendation for conclusion of law pursuant to the provisions of Rule 37 (e) (4) and that the time provided by the Rules for the filing of such request for *794 review bas expired. Since the court is in agreement with the opinion and recommendation of the trial commissioner, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Plaintiff is therefore not entitled to recover. Defendant’s motion for summary judgment is granted, plaintiff’s motion for summary judgment is denied and plaintiff’s petition is dismissed.
OPINION OF COMMISSIONER
Plaintiff, the widow of a former Government employee, sues for the amount of life insurance to which she claims entitlement under the Federal Employees’ Group Life Insurance Act of 1954. (5 USG §§ 2091 et seq.) The facts giving rise to the claim are, as follows:
Plaintiff’s husband, Earl Walker, an employee of the Corps of Engineers in Walla Walla, Washington, was discharged about November 15, 1953. On appeal the Civil Service Commission on January 24,1955, reversed and ordered him restored to duty retroactively to the date following the date of his dismissal. Such restoration was accomplished on February 21, 1955. Several days later, on or about February 24, he was suspended by the Corps of Engineers and discharged on March 24, 1955. The validity of this second dismissal is not disputed.
Despite the Commission’s reinstatement order, the Corps of Engineers refused to pay Mr. Walker his back salary or to pay him for the period from February 23,1955, to March 24,1955. It did, however, pay him for two days of work on February 21 and 22,1955, after deducting $1.75 to cover premiums under the Federal Employees’ Group Life Insurance Act.
On March 25, 1955, the day after his second discharge, Mr. Walker was furnished a notice of his privilege to convert his group insurance to an individual policy of life insurance.[1] This “Notice of Conversion Privilege” stated in part:
*795 An employe is entitled to convert to an individual policy when his group insurance terminates because of separation from the agency, * * *.
An employee whose group insurance terminates as indicated above may, under provisions set forth in his Certificate of Group Insurance, purchase an individual policy of life insurance without medical examination. The individual policy may be in an amount not exceeding the employee’s group life insurance and will be issued at rates applicable to the type of policy purchased and to his current age and class of risk.
If you are entitled to convert group life insurance to an individual policy and wish to exercise this privilege, you must:
1. Ask (the District Engineer, U.S. Army Engineer District, Walla Walla, Wash.) to give you a completed Agency Certification of Insurance Status, and
2. Follow the instructions printed on the Agency Certification of Insurance Status, and mail it to the Office of Federal Employees’ Group Life Insurance, 330 Fourth Avenue, New York 10, N.Y. That office will promptly mail to you detailed information on how to apply for conversion.
IMPORTANT
The time in which an employee may convert is limited. The completed “Agency Certification of Insurance Status” (not this form) must be mailed to the Office of Federal Employees’ G-roup Life Insurance within 31 days after your group insurance terminates, or within 15 days after the date of this notice, whichever basis gives you the most time.
Under certain conditions, life insurance is payable if death occurs within 31 days after an employee’s group insurance terminates, even though he has not applied for conversion. If death occurs within this period further information concerning possible benefits may be *796 obtained from, the agency named below. (District Engineer, U.S. Army Engineer District, Walla Walla, Washington.)[2]
Mr. Walker took no action to exercise his right to convert his insurance.
After the second discharge, Mr. Walker filed a claim for back pay with the General Accounting Office. He died in December 1955 while the claim was still pending. Subsequently, the GAO on July 13, 1956, issued a certificate of settlement allowing the claim in the gross amount of $7,972.79, representing compensation due Mr. Walker for the periods from November 28, 1953 to February 19, 1955, and from February 23 to March 24, 1955. From this amount several deductions were made, including one for $26.25 representing the decedent’s premiums under the Group Life Insurance Act.[3]
Several months later the plaintiff filed a claim for death benefits under the Group Life Insurance Act, which claim was denied on the ground that her deceased husband had not converted his group insurance policy within 31 days after his dismissal on March 24,1955. An administrative appeal was unsuccessful.
Defendant has moved for summary judgment on the ground that the petition does not assert a claim cognizable in this court, and that in any event there is no right of recovery since the decedent had not exercised his right of conversion.
In her cross-motion, plaintiff denies lack of jurisdiction. Beyond that she argues that the action taken by the Corps of Engineers in denying her husband back pay when his dismissal was declared invalid by the Civil Service Commission was so arbitrary and capricious that it denied the *797 deceased income to which, he was entitled, and with which he could have caused his insurance policy to be converted to a private policy. In short, plaintiff urges that the decedent’s failure to convert was due to the illegal action of the agency in denying him funds with which to convert. She further argues that the arbitrary and capricious action of the Corps of Engineer forced the decedent to file a claim with the GAO which was paid after his death, but with a deduction for premiums on life insurance coverage. This deduction, she insists, gave rise to a right of conversion of the policy within a period of thirty-one days from the date of the deduction.
By way of background, the Federal Group Life Insurance Act of 1954 was designed to provide low-cost group life, accidental death and dismemberment insurance to Federal employees in sums approximating their annual salaries.[4] Under the Act each covered employee is insured for a sum equal to his annual compensation raised to the next higher multiple of $1,000, with a maximum of $20,000 in any case. The amount of insurance is reduced by 2 percent a month after the individual attains age 65, subject to a maximum reduction of 75 percent. The Act sets up an order of precedence for paying the insurance upon death.
Insurance under the Act is automatic unless the employee elects not to be insured. As his share of the premium cost, there is withheld from each covered employee’s salary an amount determined by the Civil Service Commission but not exceeding 25 cents biweekly for each $1,000 of his group life insurance. The Government contributes an amount not to exceed one-half the sum withheld from the employee. These employee and Government contributions are deposited in a special fund in the United States Treasury, which fund is used for insurance payments to insurance companies and for administrative expenses.
The Commission is authorized to purchase from one or more companies a policy or policies to provide the insurance benefits specified in the Act. As previously pointed out, each policy so purchased by the Commission must, among *798 other things, contain a provision that any insurance under the Act on any employee shall cease upon his separation from the service or twelve months after discontinuance of his salary payments, whichever first occurs, subject to a provision which must be contained in the policy for temporary extension of coverage and for conversion to an individual policy of life insurance under conditions approved by the Commission. The Commission is required to arrange to have each employee insured under the group policy receive a certificate setting forth benefits to which the employee is entitled; to whom such benefits shall be payable; to whom claims should be submitted; and summarizing the provisions of the policy principally affecting the employee. This certificate is in lieu of the one which the insurance company would otherwise be required to issue.
Finally, section 14 of the Act (5 USC § 2103) provides, as follows:
The district courts of the United States shall have original jurisdiction, concurrent with the Court of Claims, of any civil action or claim against the United States founded upon this chapter.
In passing, it is clear that this provision neither adds to nor subtracts from the jurisdiction of this court with respect to claims founded on the life insurance act. For under the Tucker Act (28 USC § 1491 (1958)), this court has jurisdiction over “any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.” The district courts, on the other hand, have general jurisdiction over any such claim against the United States that does not exceed $10,000 in amount. (28 USC § 1346 (b)). Quite obviously then, the purpose of the jurisdictional provision of the life insurance act — apart from possible clarification — was to remove this $10,000 jurisdictional limitation of the district courts in respect to claims arising under the life insurance act. Thus, the Senate Committee on Post Office and Civil Service stated in its report on the bill (S. Rept. 1654 (83d Cong. 2d Sess.) pp. 4-5 (1954), that “(s)ection 14 *799 would clarify the rights of claimants who may wish to make the United States a party to the court action involving a claim under the program (and) would extend the jurisdiction of United States district courts above the $10,000 limitation now in effect.” See also Barnes v. United States, 307 F.2d 655 (D.C. Cir. 1962).
It is clear, in short, that this court by virtue of the Tucker Act has jurisdiction of any claim against the Government founded on the life insurance act or on any regulation issued by the Civil Service Commission pursuant thereto. But this still does not resolve the jurisdictional question for under the insurance act, the Government itself is not the insurer nor does it issue the policy to the employee. Rather, it purchases a group policy from one or more insurance companies under which benefits prescribed by the act are paid. Premiums on the group policy are paid by the Government from the special fund established in the Federal Treasury, contributions to which are made by the employee and the Government. In such circumstances, the group policy does not create a contract between the Government and the employee. Boseman v. Connecticut General Life Insurance Co., 84 F. 2d 701 (5th Cir. 1936), affirmed 301 U.S. 196 (1937); Metropolitan Life Insurance Co. v. Quilty, 92 F. 2d 829 (7th Cir.1937); Hamblen v. Equitable Life Assurance Society, 124 Neb. 841, 248 NW 397 (1933). Hence for breach of the policy, action lies against the insurance company, not the Government. See Railsbach v. United States, 181 F. Supp. 765 (D. Neb. 1960); Grove v. United States, 170 F. Supp. 176, 177 (E.D. Va. 1959). See also 5 CFR § 37.11 (1961).
This is not to say that the Government is totally immune from suit under the insurance act. Viewed in the context of that act, it is clear that the Tucker Act vests in this court jurisdiction over any claim against the United States for breach of any obligation owed or undertaken by it under the life insurance program. See 5 CFR §37.11 (1961). Thus I concur with the recent holding of the Court of Appeals for the District of Columbia in the Barnes case that a claim against the Government is cognizable under the life insurance act “to the extent that * * * (the) claim can be shown to involve some right created by (that) * * * Act and a *800 breach by the Government of some duty with respect thereto.” Barnes v. United, States, 307 F. 2d 655, 657-8 (D.C. Cir. 1962).
In Barms the widow of a former Government employee brought suit against the United States seeking, among other things, recovery of the amount of a policy issued under the life insurance act, which her deceased husband had failed to convert to an individual policy within 31 days of his voluntary retirement. The court first concluded that “the United States has consented to be sued for any breach of legal duty owed by it under the Act.” (p. 657) It affirmed dismissal of the action on the ground that there was “no basis for a conclusion that the Government failed in the performance of any duty arising under the Act.” (p. 659)
As in that case, it is evident here that the Government did not commit a breach of any obligation owed by it under the life insurance act. On the day following his separation, a notice of conversion privilege was mailed to and received by Mr. Walker advising him that his insurance terminated upon his separation, but that he had a 31-day grace period within which to convert to an individual policy. It further set forth the procedural steps which must be followed in effecting this right of conversion. Mr. Walker, therefore, had full notice of his insurance coverage and of his right of conversion. He failed to exercise this right and his policy therefore terminated.
Plaintiff says that the decedent’s failure to convert was due to the illegal action of the Corps of Engineers in denying him funds with which to convert. But the life insurance act imposes no obligation on the United States to suspend operation of the 31-day grace period for conversion of the policy until funds for costs of the conversion are in the hands of the separated employee. It is true that the Corps of Engineers refused to pay Mr. Walker his back pay forcing him to file a claim with the General Accounting Office, and it may be that such refusal was intolerable. Nevertheless, this would subject the Government only to liability for damages in an amount equal to that back pay (a liability which has since been satisfied). It would not subject the Government to liability for other consequences resulting *801 from the employee’s lack of funds since it is an universally recognized principle that where a person is under an obligation to pay a sum of money, the measure of damages for nonperformance is the sum of the money itself (plus interest at the legal rate in the event the debtor is not the Government). “(N)o other damages are ever allowed.” Williston Contracts (Eev. ed.) § 1410. See also Loudon v. Taxing District, 104 U.S. 771 (1881); Board v. Roach, 174 F. 949, 954 (8th Cir. 1909).
Lacking merit is plaintiff’s further contention that deduction of premiums from the back pay of the deceased gave rise to a right of conversion of the policy within a period of 31 days from the date of the deduction. No such right is provided by the statute or the regulations. Under the Civil Service Commission regulations issued pursuant to the act, the period in which to apply for conversion is fixed at 31 days after separation from the service, not at some indeterminate date in the future.

 The right of conversion is required by 5 TJSC § 2095 (Supp. II, 1952) which provides, in part, that “(e)ach policy purchased under this (Act) shall contain a provision, In terms approved by the (Civil Service) Commission, to the effect that any insurance thereunder on any employee shall cease upon his separation from the service or twelve months after discontinuance of his *795 salary payments, whichever first occurs, subject to a provision which shall be contained in the policy for temporary extension of coverage and for conversion to an individual policy of life insurance under conditions approved by the Commission, * * *”
A Civil Service regulation provided that “the insurance of an insured employee shall cease on the date of his separation from the service, subject to extension of his life insurance coverage for a period of 31 days thereafter.” The regulation further provided that “(d)uring the 31-day extension of life insurance coverage * * * an individual may, upon application and without medical examination, convert all or any part of his group life insurance to an individual policy of life insurance at rates applicable to his attained age and class of risk.” 19 Fed. Reg. 5465-6, §§ 37.5 (b) and (g) (1954).

 The Act as amended in August 1955 provides that if an employee is separated for retirement on an immediate annuity with at least 15 years of creditable service or is separated for disability retirement, the life insurance is continued without cost to the employee. Periods of honorable active service in the armed forces are credited towards the required 15 years, provided the employee has completed 5 years of civilian service. 5 USC (Supp. Ill, 1952) § 2095. These provisions for retention of life insurance without cost were not applicable in Mr. Walker’s case.

 The Comptroller General has ruled that under the Back Pay Act if a Federal employee is illegally removed from his position and later ordered reinstated, the employee has been covered by the insurance act during the period of his unlawful separation, and that a deduction of his insurance premiums for that period is therefore required. 36 Comp. Gen. 225 (1956).

 See generally S. Rept. 1654, 833 Cong., 2d Sees.; H. Kept. 2579, 83d Cong., 2d Sees.