# United States Court of Appeals for the Federal Circuit

05-3358

ANNA MILLER,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Catherine E. Stetson, Hogan & Hartson L.L.P., of Washington, DC for petitioner.

Joan Stentiford, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. On the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; Donald E. Kinner, Assistant Director; Christian J. Moran,Trial Attorney. Of counsel on the brief was Paul N. St. Hillaire, Attorney, Office of the General Counsel, Office of Personnel Management, of Washington, DC. Of counsel was John H. Williamson, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice.

Martha B. Schneider, General Counsel; and Rosa M. Koppel, Deputy General Counsel, Office of the General Counsel, United States Merit Systems Protection Board, of Washington, DC for amicus curiae.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

05-3358

ANNA MILLER,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

_____

DECIDED:  June 8, 2006

_____

Before SCHALL, BRYSON, and DYK, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> BRYSON.  Dissenting opinion filed by <u>Circuit Judge</u> DYK.

BRYSON, <u>Circuit Judge</u>.

Anna Miller, a retired federal employee, petitions this court for review of a decision of the Merit Systems Protection Board, Docket No. CH-0845-04-0285-I-1.  In the matter on appeal, the Office of Personnel Management ("OPM") ruled that Ms. Miller owed more than $8,000 in back premiums for coverage under the Federal Employees' Group Life Insurance program ("FEGLI").  OPM sought to collect that sum by reducing the amount of the retirement annuity payments that Ms. Miller received from the federal government under the Federal Employees' Retirement System ("FERS").  She challenged the reduction by appealing to the Board and requesting that the Board adjudicate her claim that she should not have been required to pay the back premiums.

The Board held that it lacked jurisdiction to consider the merits of her appeal. We affirm.

I

Ms. Miller worked as a registered nurse for the Department of Veterans Affairs in Danville, Illinois, until January 5, 1991. She was removed from her position because the agency determined that she was unable to perform her duties for medical reasons. Despite the agency's finding, OPM denied her application for disability retirement. She appealed that denial, but her appeal was unsuccessful.

In November 2001, Ms. Miller applied for a "deferred or postponed" annuity under FERS. OPM reviewed her application and determined that she had been eligible for immediate retirement in January 1991 when she was terminated, because at that time she was 63 years old and had completed 16 years of service. See 5 U.S.C. § 8412(c). Based on its finding as to her eligibility date, OPM determined that Ms. Miller was entitled to a retirement annuity retroactive to January 6, 1991, the day after her employment was terminated. OPM calculated the amount of annuity benefits that had accrued between January 6, 1991, and March 30, 2002, to be $98,823.67. On April 2, 2002, OPM sent Ms. Miller an annuity adjustment payment of $78,774.71, which represented the accrued annuity benefits less certain deductions.

After determining that Ms. Miller was entitled to a retroactive annuity payment, OPM sent her a letter in which it asked her to make an election for basic life insurance coverage, choosing one of three options: 75% reduction in coverage, 50% reduction in coverage, and no reduction in coverage. The letter advised her that there would be no retroactive premium charge if she selected the 75% reduction option, but that the 50%

reduction and no reduction options would give rise to retroactive premium charges of $2527.33 and $8372.10, respectively. OPM stated that it was required to "start the collection of premiums on your annuity commencing date," which was in 1991 after the retroactive annuity determination.

Ms. Miller selected the "no reduction" option, but she returned the form to OPM with a letter in which she contended that she should not be charged life insurance premiums for the period 1991 through 2002, since she had not had life insurance coverage during that period. An exchange of letters between OPM and Ms. Miller followed. OPM ultimately decided that Ms. Miller was required to pay the premiums for the period 1991 to 2002 and that the retroactive premium obligation would be treated as an overpayment of her retroactive annuity award. OPM advised Ms. Miller that it would collect the overpayment through deductions from future annuity payments. Ms. Miller also requested that OPM waive collection of the overpayment, but OPM refused to do so. Ms. Miller requested reconsideration, but OPM affirmed its initial decision.

Ms. Miller appealed OPM's decision to the Merit Systems Protection Board. She challenged OPM's determination that when it retroactively awarded her a retirement annuity and she elected full life insurance coverage, it was required by 5 U.S.C. § 8707(b)(1) to charge her for premiums retroactive to 1991. In particular, she argued that because she did not enjoy federal life insurance protection between 1991 and 2002, she should not have to make a retroactive payment of the premiums for insurance coverage during that period. She also appealed from OPM's refusal to waive recovery of the overpayment.

The administrative judge who was assigned to the case disagreed with Ms. Miller and held that OPM had reasonably construed 5 U.S.C. § 8707(b)(1) to require it to charge her for insurance premiums beginning as of the date from which her retroactive annuity payments began to accrue. The administrative judge rejected Ms. Miller's argument that OPM's interpretation of the statute was at odds with its regulations governing the payment of life insurance premiums, which require that premiums be withheld from the date that an "annuity begins." 5 C.F.R. § 870.404(a)-(b). The administrative judge concluded that although Ms. Miller's annuity payments began in 2002, her actual entitlement to the annuity was retroactive to the date she was separated from employment in 1991 and that "her annuity is deemed to have begun in January 1991, notwithstanding the fact that the annuity payments were first tendered to her over ten years later." As to Ms. Miller's request for waiver of the back premium payments, the administrative judge held that Ms. Miller had not shown that she was entitled, under 5 C.F.R. § 845.301, to a waiver of OPM's right to recover the overpayment.

With respect to Ms. Miller's challenge to the amount of the overpayment, the administrative judge held that the Board did not have jurisdiction to review OPM's determination as to that issue. The administrative judge noted that by statute, 5 U.S.C. § 8461(e), individuals may appeal to the Board from actions affecting their right to retirement benefits under FERS. However, the administrative judge ruled that because FERS is codified in chapter 84 of title 5 of the United States Code, while the FEGLI program is codified in a different chapter—chapter 87—OPM's rulings regarding FEGLI benefits and coverage are not governed by the provisions of the FERS statute.

05-3358                                              4

On its own motion, the full Board reopened the case and held that it had no jurisdiction over Ms. Miller's challenge to the overpayment. Because it concluded that the overpayment in this case "resulted from a change in the appellant's life insurance coverage and not from anything related to the computation of her retirement annuity," the Board held that it "lacks jurisdiction over issues regarding the existence and amount of the overpayment." With respect to the portion of the appeal in which Ms. Miller sought a waiver of the repayment obligation, however, the Board held that it did have jurisdiction. On that issue, the Board concluded that because Ms. Miller had received her overpayment knowing that it was subject to OPM's claim for an additional premium payment, waiver of the repayment obligation was not required. Accordingly, the Board upheld OPM's decision in part and dismissed the appeal in part for lack of jurisdiction. Ms. Miller seeks review by this court.

II

The jurisdiction of the Merit Systems Protection Board is confined to those matters assigned to it by statute, rule, or regulation. See Meeker v. Merit Sys. Prot. Bd., 319 F.3d 1368, 1374 (Fed. Cir. 2003); Schmidt v. Dep't of the Interior, 153 F.3d 1348, 1356 (Fed. Cir. 1998); 5 U.S.C. § 7701(a). The Board has jurisdiction over appeals arising from OPM's administration of the Federal Employees' Retirement System Act ("FERSA"), 5 U.S.C. §§ 8401-79, but it does not have jurisdiction over appeals arising from OPM's administration of the Federal Employees' Group Life Insurance Act ("FEGLIA"), 5 U.S.C. §§ 8701-16. The jurisdictional provision that governs review of disputes concerning annuity payments made under FERSA, 5 U.S.C. § 8461(e)(1), provides that, subject to an exception not applicable here, "an administrative action or

order affecting the rights or interests of an individual or of the United States under the provisions of [FERSA] administered by [OPM] may be appealed to the Merit Systems Protection Board under procedures prescribed by the Board." The jurisdictional provision that governs review of disputes concerning FEGLIA, 5 U.S.C. § 8715, provides that "[t]he district courts of the United States have original jurisdiction, concurrent with the United States Court of Federal Claims, of a civil action or claim against the United States founded on [FEGLIA]." The question in this case is whether Ms. Miller's claim may be characterized as a challenge to an order affecting her rights under FERSA, as she contends, or whether it should be characterized as a claim founded on FEGLIA, as the Board held and as the Board and the United States argue in this appeal. We conclude that the dispute is properly characterized as one founded on FEGLIA, and that jurisdiction to review the overpayment determination lay in the district court or the Court of Federal Claims, not in the Merit Systems Protection Board.

The dispute on the merits in this case is whether Ms. Miller should be required to make premium payments for the period 1991 to 2002, during which she was not receiving a retirement annuity but for which she was later awarded retroactive annuity payments. OPM's decision that she is required to make those premium payments was based on a construction of 5 U.S.C. § 8707(b)—a provision outside of the FERS laws— as Ms. Miller acknowledges. Ms. Miller's sole quarrel with OPM is that she disagrees with its assertion that the provisions of FEGLIA require it to deduct retroactive payments from her retirement annuity. She supports her arguments on the merits with references to various provisions of FEGLIA and corresponding regulations. If Ms. Miller's proposed construction of FEGLIA is correct, she will not have to make the back premium

payments. If OPM's construction is correct, she will. The resolution of the dispute in this case thus depends on an interpretation of FEGLIA. Put another way, Ms. Miller's claim to have her annuity payments restored to their full, non-offset amount is "founded" on FEGLIA within the meaning of FEGLIA's review provision, 5 U.S.C. § 8715. While the mechanism for collecting the overpayment was through a reduction in Ms. Miller's annuity payments, the order requiring that reduction does not "affect [her] rights or interests" under FERS, within the meaning of the FERS review provision, 5 U.S.C. § 8461(e)(1). That is because the reduction in her annuity payments was merely the mechanism for recovering funds that OPM determined Ms. Miller owed under FEGLIA; the reduction was not based on any decision regarding a substantive right or interest under FERS.

The Board has consistently held that, when OPM seeks to offset an employee's salary or retirement benefits to collect a debt, the Board does not have jurisdiction over the merits of the underlying dispute that gave rise to the debt. See, e.g., Ramirez v. Dep't of the Army, 86 M.S.P.R. 211, 213 (2000); Lary v. Office of Pers. Mgmt., 65 M.S.P.R. 291, 298-99 (1994), rev'd on other grounds, King v. Merit Sys. Prot. Bd., 105 F.3d 635 (Fed. Cir. 1997); Malone v. Office of Pers. Mgmt., 52 M.S.P.R. 655, 657 (1992); Lashley v. Office of Pers. Mgmt., 45 M.S.P.R. 360, 365 (1990). In Campbell v. Office of Personnel Management, 90 M.S.P.R. 68 (2001), a case analogous to this one, an annuitant's decision to change his life insurance coverage resulted in an overpayment of his CSRS annuity, which OPM recovered by a reduction in his annuity payments. The annuitant argued, as Ms. Miller argues here, that OPM's retroactive assessment of premiums "would be collecting payments for coverage [he] did not have."

Id. at 70. The Board dismissed the case for lack of jurisdiction because "the overpayment resulted, not from anything related to the computation of the appellant's retirement annuity, but rather from a change in the terms of his life insurance coverage and premiums therefor, as interpreted by OPM, an administrative action not covered by [the CSRS statutes]." Id. at 71. Similarly here, Ms. Miller's overpayment is due to OPM's assessment of her rights and responsibilities under the FEGLIA statutes, not the FERS statutes.

Although we are not bound by these decisions of the Board, they are consistent with our decision in Lewis v. Merit Systems Protection Board, 301 F.3d 1352 (Fed. Cir. 2002). In that case, we held that an annuitant's challenge to OPM's refusal to permit him to purchase life insurance arose under FEGLIA, and was not within the Board's jurisdiction over appeals from decisions of OPM in administering the federal retirement systems. The underlying decision of OPM in this case is similar to the underlying decision in Lewis: OPM has decided that Ms. Miller is entitled to purchase full life insurance coverage, but in order to do so she must pay the back premiums to 1991. That decision, like the decision in Lewis, is a decision as to the scope of Ms. Miller's legal rights under FEGLIA, even though, as in Lewis, OPM would collect the additional premiums, if they are ultimately determined to be due, by reducing the amount of Ms. Miller's annuity payments.

In contrast to the Board's approach, Ms. Miller argues that any reduction in a retiree's FERS annuity payments "affect[s] . . . the rights or interests" of the annuitant under FERSA, and that the merits of the dispute that led to the reduction are therefore reviewable by the Board. That theory, however, would give the Board very broad

authority over a wide variety of substantive claims simply because of the mechanism used to collect the obligations stemming from those claims. We do not think that is what Congress intended.

The approach that the Board has taken in such cases makes more sense of the statutory scheme. The reduction in Ms. Miller's annuity payments was merely one of several methods OPM could have used to recover the claimed back insurance premiums. Because recovering an overpayment by an offset against annuity payments, as in this case, is both more efficient and often less burdensome than other means of collection, OPM often employs such offset mechanisms to collect annuitants' debts. It would be curious to attribute to Congress the intention to direct review of a decision pertaining to the underlying obligation to different forums depending solely on the method used to collect the obligation. As the Board points out in its brief, if 5 U.S.C. § 8461(e)(1) were interpreted to give the Board jurisdiction in every case in which an annuity payment is reduced in order to recover an asserted debt owed by the annuitant, the Board would assume the task of deciding the merits of a variety of disputes in different substantive areas, such as student loan obligations and tax law, that are far afield from the Board's expertise and are not subjects that Congress could plausibly have intended to assign to the Board for adjudication.

The flaw in Ms. Miller's argument that any administrative offset that reduces a retiree's annuity falls within the Board's jurisdiction under section 8461(e)(1) is well illustrated by an examination of the administrative offset provisions of the Debt Collection Act, 31 U.S.C. § 3716. In that Act, Congress authorized federal agencies (and even state instrumentalities under certain conditions) to collect a wide variety of

claims by administrative offset. The scheme envisioned under the Act is for the collecting agency to provide a review mechanism through which to address the substance of the claim. If the claim is upheld, the agency may seek to collect it through an administrative offset, including an offset against federal annuity payments. 31 C.F.R. § 901.3(d). In such cases, the Office of Personnel Management is responsible for ensuring that the annuitant has had the proper due process procedures within the claimant agency, see 31 C.F.R. § 901.3(b)(4); 5 C.F.R. § 831.1803, and the failure to comply with those procedures can be appealed to the Board. See Ramirez, 86 M.S.P.R. at 214. But the Board has held that it does not have the authority to address the merits of the underlying claims, which can arise from an infinite variety of obligations that employees can incur during the course of their employment. See, e.g., Johnson v. Office of Pers. Mgmt., 97 M.S.P.R. 193, 196-97 (2004) (no review of the merits of an administrative offset sought by the Office of Worker Compensation Programs); Cebzanov v. Office of Pers. Mgmt., 96 M.S.P.R. 562, 566 (2004) (no review of the merits of an administrative offset sought by Internal Revenue Service). Moreover, the government-wide regulations that governed Debt Collection Act offsets against employees' retirement funds, until the regulations were recently revised, provided that the setoff procedures did not "authorize the OPM or the MSPB to review the merits of the requesting agency's determination with respect to the amount and validity of the claim." 4 C.F.R. § 102.4 (2000); see also 5 C.F.R. § 831.1806(d)(3)(1) (in arranging setoffs of debts against employee retirement funds, OPM has no authority to review the merits of the claim against the employee).[1] Thus, we think it clear that under the Debt

---

[1]     When the government-wide regulations were revised and recodified at 31

Collection Act Congress envisioned that the substantive claims giving rise to the administrative offset would be adjudicated in the respective agencies, not before the Board.

The same principle applies to the offset at issue in this case. As in the case of setoffs authorized by the Debt Collection Act, any reduction in the amount of a former employee's annuity payments can in a broad sense be said to affect the former employee's interests under FERSA, since an employee has an "interest" in receiving an annuity. The operation of the Debt Collection Act makes clear, however, that Congress did not intend for the term "administrative action or order affecting the rights or interests of an individual . . . under [FERSA]" in section 8461(e)(1) to encompass any order that would have the effect of reducing the amount of an annuity, either on one occasion or over a period of time. Instead, we agree with the Board that the reference to "rights or interests" in section 8461(e)(1) limits the Board to the adjudication of substantive claims created by FERSA. Contrary to Ms. Miller's contention, section 8461(e)(1) does not extend the Board's jurisdiction to encompass review of "all attempts to recover payments from a retiree's annuity benefits—regardless of the reason for the recovery or the source of the overpayment."

Ms. Miller notes that decisions whether to invoke equitable waiver of the government's right to recover overpayments, see 5 U.S.C. § 8470(b) and 5 C.F.R. § 845.301, are always reviewable by the Board, even though the underlying obligation

C.F.R. Part 900, the provision referring to OPM and the MSPB was omitted, but the promulgating agencies' contemporaneous comments make clear that the change was not meant to have substantive effect. See 62 Fed. Reg. 68,476, 68,482 (Dec. 31, 1997)

may not be related to a right or obligation created by FERSA. See Mitchell v. Office of Pers. Mgmt., 97 M.S.P.R. 566 (2004). She argues that it would be highly inefficient to have questions relating to the substantive obligation reviewed in the Court of Federal Claims or in a district court, but to have the issue of the waiver of overpayments reviewed by the Merit Systems Protection Board, since it is possible that both claims will arise in connection with a single overpayment dispute.

The possibility that a different regime would be more efficient does not justify our rejection of the system of review that Congress put into place, if we are persuaded that Congress has spoken clearly on the matter, as we are in this case. In any event, the specific concern raised by Ms. Miller is not implicated in this case, as the Board has already determined that OPM did not err by declining to waive the reimbursement requirement, and Ms. Miller has not sought further review of that issue. Therefore, we need not decide whether, in a case in which an annuitant challenges the merits of OPM's decision to offset her annuity to collect a debt external to her rights under the statutes creating the annuity and also seeks review of OPM's decision not to waive the debt, the annuitant would have to bring those claims in two different forums or whether the court addressing the overpayment decision could address the waiver issue as a matter of supplemental or pendent jurisdiction. See 28 U.S.C. § 1367; Trek Leasing, Inc. v. United States, 62 Fed. Cl. 673 (2004). If supplemental or pendent jurisdiction is available in such cases, the burden of requiring parties to litigate the two issues in different forums would, of course, be eliminated.

---

(proposed rule); 65 Fed. Reg. 70,390, 70,392 (Nov. 22, 2000) (explaining reason for change).

In summary, Ms. Miller's challenge to the merits of the government's overpayment claim is not within the scope of 5 U.S.C. § 8461(e)(1), but falls instead under section 8715, which requires that her claim be brought either in a federal district court or in the Court of Federal Claims. We therefore affirm the Board's decision dismissing her claim that OPM erred in assessing an overpayment against her.

Each party shall bear its own costs for this appeal.

The court wishes to express its appreciation to Catherine E. Stetson, Esq., who undertook to represent Ms. Miller pro bono at the court's invitation and who submitted a brief on behalf of Ms. Miller.

# United States Court of Appeals for the Federal Circuit

05-3358

ANNA MILLER,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

DYK, Circuit Judge, dissenting.

I respectfully dissent from the majority's holding that the Merit Systems Protection Board ("MSPB") lacks jurisdiction to determine whether the Office of Personnel Management ("OPM") improperly deducted amounts for life insurance from the petitioner's annuity payments. In my view the majority opinion rests on a misunderstanding of the 1978 Civil Service Reform Act ("CSRA"), Pub. L. 95-454, 92 Stat. 1111 et seq., and of the limited provision for court jurisdiction over life insurance claims enacted in 1954 and now appearing in 5 U.S.C. § 8715.

I

Before the CSRA legislation of 1978, claims for payment of federal annuities could be brought in the Court of Claims or district courts under the Tucker Act or the Little Tucker Act. See Lindahl v. Office of Pers. Mgmt., 470 U.S. 768, 772-73 (1984); Dismuke v. United States, 297 U.S. 167, 172 (1936); see also 28 U.S.C. § 1346(a)(2) (2000); 28 U.S.C. § 1491 (2000). But in 1978, as described by the Supreme Court in

Lindahl, Congress placed exclusive jurisdiction in the Merit Systems Protection Board ("MSPB") to adjudicate annuity claims which had previously been within the jurisdiction of the Court of Claims and the district courts. Lindhal, 470 U.S. at 773-74. Congress "comprehensively overhauled the civil service system," and created the OPM and the MSPB. Lindhal, 470 U.S. at 773[1]; see CSRA §§ 201, 202, 92 Stat. 1118-31. The CSRA created a specialized review process for resolving claims relating to retirement benefits. Today this system governs claims under both the Civil Service Retirement System ("CSRS") and the Federal Employees Retirement System ("FERS"). The system calls for the OPM, in the first instance, to adjudicate any claim arising under the retirement system. See 5 U.S.C. §§ 8347(a)-(b), 8461(b)-(c) (2000). Next, OPM decisions which affect "the rights or interests of an individual" under FERS or CSRS are appealable to the MSPB. See 5 U.S.C. §§ 8347(d)(1), 8461(e)(1). Finally, an employee can appeal a decision of the MSPB to this court, which has exclusive jurisdiction over such appeals. See 5 U.S.C. § 7703(b)(1) (2000); 28 U.S.C. § 1295(a)(9) (2000); Lindahl, 470 U.S. at 774.

The question presented here is whether the legitimacy of a government deduction from an annuity otherwise due an employee (basically a defense to the

---

[1] Lindhal addressed the effect of a finality provision that was first enacted in 1948, when annuity claims were still reviewable by the district courts and Court of Claims. Lindhal, 470 U.S. at 773. The current version of that provision provides that "decisions . . . [of the designated administrative agency] concerning these matters are final and conclusive and are not subject to review." 5 U.S.C. § 8347(c) (2000). The Court held that this provision barred the review of the "factual underpinnings" of disability determinations under the CSRA but permitted review of substantial procedural issues. Lindhal, 470 U.S. at 791.

annuity claim) is to be litigated before the MSPB in a proceeding claiming the annuity, or in a suit in the Court of Federal Claims or the district courts.

While the annuity claim arises under the provisions of FERS, 5 U.S.C. §§ 8401-79, the right to the offset was created by 5 U.S.C. § 8707(b), a provision of the Federal Employees Group Life Insurance Act ("FEGLIA"). Thus, the employee's request for an unreduced amount depends both on interpretations of FERS (the amount of the annuity) and FEGLIA (the amount of the reduction). At common law the legitimacy of an employer's deduction from employee compensation was litigated in a suit to recover the compensation. The employee would sue for the unpaid compensation, and the employer would defend on the ground that it had a no obligation to pay the full amount because it had a right to deduct the premium. The majority rejects this approach with respect to federal annuity claims. To the extent the majority may suggest that the MSPB is without jurisdiction to decide cases that turn on the interpretation of statutes (such as FEGLIA) not within its immediate grant of jurisdiction, that is plainly incorrect. The MSPB frequently decides such cases and interprets both federal and state statutes that are outcome determinative.[2]

---

[2] Dickey v. Office of Pers. Mgmt., 419 F.3d 1336, 1339-40 (Fed. Cir. 2005) ("In determining whether a common-law marriage existed, we must apply the laws of the state where the government employee had a permanent home when he or she died . . . ."); White v. Dep't of Justice, 328 F.3d 1361, 1368-70 (Fed. Cir. 2003) (affirming Board decision that petitioner had been convicted of "a misdemeanor crime of domestic violence" within the meaning of 18 U.S.C. § 921(a)(33), and thus was ineligible to carry a firearm under 18 U.S.C. § 922(g)(9)); Wiley v. Dep't of Justice, 328 F.3d 1346, 1357 (Fed. Cir. 2003) (reversing Board determination that the search of petitioner's car was reasonable within the meaning of the Fourth Amendment); O'Neill v. Dep't of Hous. and Urban Dev., 220 F.3d 1354, 1356, 1363 (Fed. Cir. 2000) (holding that the Board erred in determining that petitioner was an "agent" within meaning of statute prohibiting federal employee from acting as agent of private party before government agency); cf. King v. Nazelrod, 43 F.3d 663, 666 (Fed. Cir. 1994) (holding

Thus where, as here, a retired employee initiates a proceeding to recover an annuity, the MSPB has jurisdiction--indeed exclusive jurisdiction--to adjudicate the claim for an annuity, and in doing so may adjudicate a government defense that the annuity was properly reduced by life insurance premiums.

II

Ultimately, the majority opinion appears to rest its decision on the ground that 5 U.S.C. § 8715 requires that suits contesting improper life insurance deductions be initiated in the courts. However, there is no indication in section 8715 that that jurisdictional provision was designed to be exclusive. The language of the statute and its legislative history suggest that the statute was designed to allow an employee to bring cases in the district court without regard to the dollar limit of the Little Tucker Act.

In my view it is particularly clear that section 8715 could not have been designed to force claimants to litigate annuity claims in the Court of Federal Claims and the district courts. Section 8715 provides that "[t]he district courts of the United States have original jurisdiction, concurrent with the United States Court of Federal Claims, of a civil action or claim against the United States founded on this chapter." 5 U.S.C. § 8715 (2000). As the majority appears to recognize, "arising under" jurisdiction often depends on the way that a plaintiff chooses to frame a complaint. Here the petitioner's claim to an annuity could be framed as arising under FERS or as arising under FEGLIA. If a complaint were framed as simply a request for a withheld annuity, it would not arise under FEGLIA, even thought the United States could defend on the ground that the

that an agency is required to prove all elements of the criminal offense with which petitioner is charged).

05-3358                                    4

deductions were proper under FEGLIA.  See, e.g., Holmes Group, Inc. v. Vornado Air

Circulation Sys., Inc., 535 U.S. 826, 830 (2002).  In other words, this is not a case in

which petitioner's claim necessarily arises under FEGLIA.  There is also nothing in the

language or history of FEGLIA that suggests that section 8715 was designed to compel

that litigation of all interpretive issues under FEGLIA be brought under that provision.

The predecessor of section 8715 was enacted in 1954 as part of FEGLIA, which

"was designed to provide low-cost group life, accidental death and dismemberment

insurance to Federal employees in sums approximating their annual salaries."  Walker

v. United States, 161 Ct. Cl. 792, 797 (1963).  The purpose of the jurisdictional

provision, as described in the accompanying Senate Report, was to "extend the

jurisdiction of United States District Courts above the $10,000 limitation now in effect

[under the Tucker Act]."  S. Rep. No. 83-1654 at 4-5 (1954), as reprinted in 1954 U.S.

Code Cong. & Admin. News, at 3052; see Walker, 161 Ct. Cl. at 798-99.  Other than

eliminating the $10,000 limit, the provision was not designed to extend court jurisdiction

beyond what was already provided by the Tucker Act.  Walker, 161 Ct. Cl. at 798-99.

The purpose of section 8715 was thus quite limited.  Under FEGLIA, the United

States did not itself write policies of insurance, but rather arranged for private group

policies for United States employees.  Walker, 161 Ct. Cl. at 799.  Normally disputes

concerning the recovery of policy proceeds would be brought against the private

insurance company, not the United States.  The evident purpose of section 8715 was to

clarify that claimants to the proceeds of life insurance policies of employees could sue

the United States in the courts if the United States failed to arrange for or permit the

purchase of insurance.  There is not the slightest indication in the language or

legislative history of section 8715 that the statute was designed to confer jurisdiction in the courts to determine the rights of the annuitants to recover annuities or contest adjustments to annuities.

The limited purpose of section 8715 is confirmed by the cases decided under this provision. See Lewis v. Merit Sys. Protection Bd., 301 F.3d 1352, 1353 (Fed. Cir. 2002); Walker, 161 Ct. Cl. at 800; Barnes v. United States, 307 F.2d 655, 657-58 (D.C. Cir. 1962). For example, in Barnes, the District of Columbia Circuit held that it had jurisdiction over a suit by the widow of a retired government employee to secure funds allegedly owed to her under a group insurance policy arranged for by the United States. Id. at 657-58. The questions were whether the policy lapsed because the employee failed to convert the group policy to an individual policy upon his separation from service, and whether the government had provided adequate notice of the conversion rights. The court affirmed the dismissal of the claim, holding that the government had not "failed in the performance of any duty arising under the Act," because the employee's superiors had notified him of his right to convert. Id. at 659. See also Walker, 161 Ct. Cl. at 800 (dismissing a widow's claim to insurance proceeds because the government, which had notified employee of his right to convert, had not "breach[ed] . . . any obligation owed by it under the life insurance act."). More recently, in Lewis, we held that an allegation that OPM breached a duty to permit an employee to purchase additional life insurance must be brought in the courts under section 8715. Lewis, 301 F.3d at 1354. None of these cases has held or suggested that annuity claims or claims contesting annuity deductions must be brought under section 8715 in the district courts or the Court of Federal Claims.

05-3358                                    6

In short, section 8715 was designed to provide court jurisdiction to determine claimed rights to life insurance by federal employees, not compel federal employees to litigate the propriety of particular deductions for life insurance in the Court of Federal Claims or district courts.

III

The effect of today's decision is to bifurcate the claims process that was created by the 1978 legislation. If the annuity case involves an interpretation of the provisions of FERSA, the claim must be pursued before the MSPB. If the ground for denying the annuity rests on some other statutory provision, such as the provisions of FEGLIA at issue here, jurisdiction lies in the district courts and the Court of Federal Claims under the Tucker Act. In my view there is no basis for fragmenting suits for recovering annuity payments, and such fragmentation appears to be contrary to the purpose of the CSRA legislation which gives exclusive jurisdiction to the MSPB over annuity claims.

It is entirely counterintuitive that Congress would have wished to require employees to litigate the propriety of deductions in the courts rather than before the MSPB. Bringing suit in district court imposes a significantly greater burden on employees than seeking review through the MSPB's administrative procedures. Today's decision thus requires disputes involving relatively small amounts to be resolved in the more expensive forum. Furthermore, an employee challenging both the method by which an annuity is calculated and the merits of a FEGLIA deduction is forced to split its claim between the courts and the MSPB. So too, it appears that the Board exercises jurisdiction over decisions whether to waive the government's right to recover overpayments if the government fails to deduct the proper amount for life

insurance premiums. <u>See</u> 5 U.S.C. § 8470(b) (2000); 5 C.F.R. § 845.301 (2005); <u>Mitchell v. Office of Pers. Mgmt.</u>, 97 M.S.P.R. 566, 570-71 (2004). While the majority purports to reserve the question, Maj. Op. at 12, today's decision would again require bifurcation of such claims, with litigation of the deduction issue in the Court of Federal Claims or district courts and the waiver issue in the MSPB.

Finally the majority expresses concern that because of the Debt Collection Act, 31 U.S.C. § 3716, the Board might be required to adjudicate the merits of various debt claims by the government in cases in which the annuity was reduced because of an offset for a government debt. But the Debt Collection Act itself provides a specific mechanism for the determination of the merits of the debt. The statute provides that the agency must determine whether the debt is owed, <u>see</u> 31 U.S.C. § 3716(a), and the courts have assumed that the agency decision is reviewable under the APA. <u>See</u> <u>DRG Funding Corp. v. Sec'y of Hous. and Urban Dev.</u>, 76 F.3d 1212, 1214 (D.C. Cir. 1996); <u>cf.</u> <u>Lockhart v. United States</u>, 376 F.3d 1027, 1028-29 (9th Cir. 2004), <u>aff'd</u>, 126 S. Ct. 699 (2005). In the present situation, Congress has provided no special procedure in section 3716(a) or elsewhere where issues as to the propriety of premium deductions must be adjudicated. The proper place for the determination lies in the MSPB on review of an annuity claim.

For the foregoing reasons, I respectfully dissent.